UNITED STATES of America, Appellee,

v.

Anthony FARRELL, Appellant.

No. 95–1822.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1995.

Decided Nov. 8, 1995.

---

Joseph Blake Hendrix, Little Rock, Arkansas, argued, for the appellant.

Linda B. Lipe, Assistant U.S. Attorney, argued, for the appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and McMILLIAN, Circuit Judges.

HEANEY, Circuit Judge.

Anthony Farrell conditionally pleaded guilty to unlawful possession and transfer of machine guns in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). He appeals, pursuant to Rule 11(a)(2), arguing that the government must prove as an element of the offense Farrell's knowledge that his conduct violated the law. We affirm Farrell's conviction and hold that for a "knowing violation" under The Firearms Owners' Protection Act, the government need only prove knowing and intentional conduct, not specific knowledge of the statutory offense.

## I. BACKGROUND

On August 16, 1994, Special Agents Bill Buford and Glen Cook of the Bureau of Alcohol, Tobacco, and Firearms arrested Robert Darryl Row after their undercover attempt to purchase two fully automatic machine guns from him. After his arrest, Row informed the Special Agents that he was selling the weapons—a Romanian, AKM and a Chinese, Type 56–1, both 7.62 × 39 mm caliber selective fire rifles—for Farrell under an arrangement in which Farrell would get $1,200 and Row $100. Row then made a monitored telephone call to Farrell, told him that he had sold the weapons, and set up a time to transfer the money to Farrell.

The following day Special Agent Martinez of the U.S. Air Force Office of Special Investigations arrested Farrell for his involvement in the sale of the automatic weapons. Farrell admitted his participation. He had received the weapons from a Kurdish villager while serving for the United States Air Force in northern Iraq. After returning to the United States and while experiencing financial difficulties, Farrell gave the weapons to Row and his wife to find a buyer. Farrell contends, however, that the weapons were war mementos and that he was unaware of the illegality of his conduct.

A grand jury indicted both Farrell and Row with the unlawful possession and transfer of machine guns in violation of the Firearms Owners' Protection Act (FOPA), 18 U.S.C. § 922(o) and 18 U.S.C. § 924(a)(2). At his trial, prior to jury selection, Farrell argued that the government must prove as an element of the statutory offense that he knew his conduct violated the law. The district court denied Farrell's motion and held that the relevant statutes require the government to prove only that Farrell was aware that the items were firearms and that they were fully automatic. With the consent of the government, the district court permitted Farrell to enter a conditional guilty plea and to appeal the *mens rea* issue. The district court subsequently sentenced Farrell to thirteen months in prison, three years of supervised release, and a $5,000 fine.

## II. DISCUSSION

Farrell's conviction involves two statutory provisions: one that defines his substantive offense and the other that sets out the penalty for the offense. Both of these provisions are part of the Firearms Owners' Protection Act of 1986, Pub.L. No. 99–308,

100 Stat. 449–461 (1986).[1] Under 18 U.S.C. § 922(*o* ), it is "unlawful for any person to transfer or possess a machinegun." Section 922(*o* ) defines the illegal conduct but does not specify the criminal intent necessary for a conviction. It is the penalty provision under section 924 that supplies the requisite state of mind for the underlying offense. Section 924(a)(2) attaches the penalty to whoever "knowingly violates" section 922(*o* ).

Farrell urges the court to apply fundamental rules of grammar and to follow the plain and unambiguous meaning of the statute to arrive at his interpretation of the requisite *mens rea* for the offense. *See United States v. Albertini*, 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985). Farrell argues that because the adverb "knowingly" modifies the verb "violates," the state must prove that Farrell knew his conduct was illegal and that his violation of the law was intentional. Farrell contrasts the construction "knowingly violates" from statutes that proscribe knowing conduct, such as "knowingly deliver." *See United States v. Udofot*, 711 F.2d 831, 836 (8th Cir.1983) *cert. denied* 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983) (sustaining a conviction without proof of defendant's knowledge of the law because "the word 'knowingly' modifies the verb 'to deliver,' which it immediately precedes.").

Despite the plausibility of appellant's plain-language interpretation of sections 922(*o* ) and 924(a), this court has previously cited with approval the Ninth Circuit holding that a "knowing" violation under FOPA does not include an intent to violate the law. *United States v. Hern*, 926 F.2d 764, 767 n. 5 (8th Cir.1991) (citing *United States v. Sherbondy*, 865 F.2d 996 (9th Cir.1988)). In *United States v. Sherbondy*, the Ninth Circuit acknowledged that FOPA is confusing because typically the *mens rea* for a crime is set out as part of the substantive offense and not as part of a penalties provision. 865 F.2d at 1001. Noting there are few exceptions to the rule that ignorance of the law is no excuse, the court held that "knowingly violates" does not require knowledge of the law. *Sherbon-*

*dy*, 865 F.2d at 1002. The court concluded that the most plausible and consistent interpretation of these provisions is that the penalty provisions of section 924(a) must be read into the offense provisions under section 922 so that "knowingly" modifies the underlying conduct. *Id.* at 1001. *See also United States v. Int'l Minerals & Chemical Corp.*, 402 U.S. 558, 562–563, 91 S.Ct. 1697, 1700–1701, 29 L.Ed.2d 178 (1971) (concluding "regulation" in the phrase "knowingly violates any regulation" is a shorthand designation for the underlying conduct so that "knowingly" modifies the conduct, not the violation).

Because the statutory language is at least arguably ambiguous, however, we turn to FOPA's legislative history for assistance. Although Farrell correctly asserts that FOPA stiffened the criminal intent necessary for firearm-related convictions from that of the 1968 Gun Control Act, further examination of FOPA's legislative history reveals that Congress explicitly rejected Farrell's specific intent argument. Congress chose the word "knowingly" in FOPA's final draft to distinguish it from language in earlier drafts interpreted as requiring knowledge of the law for a conviction. *See e.g.* H.R. No. Rep. 495, 99th Cong., 2d Sess. 25 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1337 ("a person who engages in the business of selling hand grenades or machine guns should not escape prosecution solely on the grounds that the government cannot produce witnesses to whom the defendant admitted knowledge"); David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb.L.Rev. 585, 647–648 (1987).

We therefore reject Farrell's plain-language and legislative history arguments and adopt the *Sherbondy* rationale: "knowingly" supplies the *mens rea* for the conduct proscribed in section 922 as designated in section 924. The statutes do not require knowledge of the law nor an intent to violate it.

■ Farrell also contends that his *mens rea* interpretation avoids Second Amendment concerns raised by his case. Farrell's Sec-

---

1. 18 U.S.C. § 922(*o* ). Pub.L. No. 99–308, § 102, 100 Stat. 449, 453 (1986). 18 U.S.C. § 924(a)(2). Pub.L. No. 99–308, § 104, 100 Stat. 449, 456 (1986) *amended by* Pub.L. No. 100–690, § 6462, 102 Stat. 4374 (1988).

ond Amendment argument lacks merit. Farrell has failed to make a fact-specific showing that possession of the regulated weapons bears a "reasonable relationship to the preservation or efficiency of a well-regulated militia" under *United States v. Hale,* 978 F.2d 1016, 1019 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993). Moreover, regardless of the *mens rea* attributed to the offense, the statute itself avoids any potential Second Amendment conflict. Section 922(*o*)(2)(A) exempts from the prohibition persons acting under the authority of the United States or of a state.

Finally, a recent decision by this court, *United States v. Barr,* 32 F.3d 1320 (8th Cir.1994), provides additional support for our interpretation of the requisite *mens rea* in this appeal. *Barr* followed the Supreme Court decision, *Staples v. United States,* —— U.S. ——, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), in which the Court refused to interpret a firearm registration statute as a "public welfare" offense, one that imposes strict criminal liability due to the dangerous nature of the regulated objects. The *Staples* conviction involved an assault rifle, which is a semi-automatic weapon, unless modified. The rifle in *Staples* had been modified and had automatic firing capabilities, but the defendant alleged ignorance of the modification. *Id.* The Court expressed concern with criminalizing apparently innocent conduct. It distinguished firearms from other dangerous items such as grenades and narcotics, noting that guns are items that traditionally have been "widely accepted as lawful possessions." *Id.* at ——, 114 S.Ct. at 1800, 128 L.Ed.2d at 620. The Court concluded that for a conviction, the state must prove that a defendant had knowledge of the weapon's automatic firing capabilities. *Id.* at —— – ——, 114 S.Ct. at 1803–1805, 128 L.Ed.2d at 624–625. The Court, however, acknowledged:

> [W]e might surely classify certain categories of guns—no doubt including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation—as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in *Freed.*

*Id.* at ——, 114 S.Ct. at 1800, 128 L.Ed.2d at 620 (referring to *United States v. Freed,* 401 U.S. 601, 607–10, 91 S.Ct. 1112, 1117–1119, 28 L.Ed.2d 356 (1971)).

The weapon involved in *Barr* was a sawed-off shotgun. Citing the above-quoted language from *Staples,* this court concluded:

> Where, as here, the characteristics of the weapon itself render it "quasi-suspect," *Staples* does not require proof that the defendant knew of the specific characteristics which make the weapon subject to the Act. The Government need only prove that the defendant possessed the "quasi-suspect" weapon and observed its characteristics.

*Barr,* 32 F.3d at 1324.

■ Although *Barr* addresses a firearm registration statute, 28 U.S.C. § 5861, that is silent as to *mens rea,* the underlying rationale applies with force in this appeal. Certain classes of weapons are of a "quasi-suspect" nature such that one cannot possess them with innocence and claim ignorance of the law. Farrell possessed such weapons. The weapons confiscated by the Special Agents were selective fire rifles. In other words, the weapons have a selector switch that enables the operator to choose semi-automatic or automatic firing with a simple flip of the switch. The machineguns are quasi-suspect under *Staples* and *Barr,* and under the registration statute, the state would only need to prove that Farrell possessed them and observed their characteristics. We refuse to impose on the state the additional burden of proving Farrell's knowledge of the law given that the statute, by definition, regulates quasi-suspect weapons.

### III. CONCLUSION

In light of the above-discussed policy and legislative history, the district court's denial of Farrell's motion was proper. The state need only prove knowing possession and transfer of a machine gun for a conviction under these statutes. Accordingly, we affirm Farrell's conviction.