# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3719

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Southern |
| Cody Jeremiah Hutzell, | * | District of Iowa. |
| | * | |
| Appellant. | * | |

_____

Submitted: March 14, 2000

Filed: July 5, 2000

_____

Before FAGG and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BENNETT,[1] Chief District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Six months before Congress enacted 18 U.S.C. § 922(g)(9), which makes it unlawful for anyone "who has been convicted in any court of a misdemeanor crime of domestic violence, to ... possess ... any firearm," Cody Hutzell pleaded guilty to a state charge of "domestic abuse assault," a misdemeanor. More than two years later, during

---

[1]The Honorable Mark W. Bennett, Chief United States District Judge for the Northern District of Iowa, sitting by designation.

an argument with his girlfriend, Mr. Hutzell fired a gun and was subsequently charged with violating § 922(g)(9). Mr. Hutzell entered a conditional guilty plea to the charge, and moved to dismiss the indictment. The district court[2] denied the motion.

On appeal from the district court's refusal to dismiss the indictment, Mr. Hutzell maintains that his conviction was improper, first, because he personally was unaware of § 922(g)(9) at the time of the argument with his girlfriend and, further, because no one could be presumed to have had notice that the conduct described in the statute was in fact unlawful. He challenges as well the district court's refusal to grant a downward departure at sentencing. We affirm the district court in all respects.

I.

The government asserts that 18 U.S.C. § 924(a)(2), which provides the penalties for those who "knowingly" violate § 922(g), requires it to prove only that Mr. Hutzell knew of the facts constituting the offense, not that he knew that it was illegal for him to possess a gun. We can find no fault with the government's proposed construction of the statute. *See Bryan v. United States*, 524 U.S. 184, 192-93 (1998). As we held in *United States v. Farrell*, 69 F.3d 891, 893 (8th Cir. 1995), *cert. denied*, 516 U.S. 1181 (1996), § 924(a)(2) does not "require knowledge of the law nor an intent to violate it."

The government's exclusive focus on statutory language, however, fails to address Mr. Hutzell's primary argument, namely, that neither he nor anyone else could be presumed to have had notice that the conduct described in the statute was in fact unlawful, as the fifth amendment's due process clause requires before the government may prosecute for that conduct. Mr. Hutzell contends that there is nothing intuitively unlawful about the conduct that § 922(g)(9) proscribes, and therefore that his

---

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

conviction for a misdemeanor involving domestic violence did not give him notice that his ability to own a gun might be subject to restrictions after such a conviction.

Mr. Hutzell acknowledges, as he must, that his position is in direct conflict with the "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally," *Barlow v. United States*, 32 U.S. 404, 411 (1834), but asserts that the Supreme Court's decision in *Lambert v. California*, 355 U.S. 225 (1957), provides in his case an exception to the rule. We agree that our decision must be guided by the principles set forth in *Lambert*, but we do not think that Mr. Hutzell is in a position similar to the one in which the defendant in *Lambert* found herself.

*Lambert*, 355 U.S. at 226, involved a Los Angeles city ordinance that imposed criminal penalties on felons who remained in the city for more than five days without registering with the police. The Supreme Court held that the defendant's conviction violated the due process clause of the fourteenth amendment because the city failed to establish that the defendant, who had resided in Los Angeles for more than seven years, had any notice that her "wholly passive" conduct (staying in Los Angeles for more than five days without registering) could result in criminal prosecution.

*Lambert* carves out a very limited exception to the general rule that ignorance of the law is no excuse. The *Lambert* principle applies, for instance, only to prohibitions on activities that are not *per se* blameworthy. *See generally United States v. Freed*, 401 U.S. 601, 608 (1971); *see also United States v. Meade*, 175 F.3d 215, 225-26 (1st Cir. 1999), and *United States v. Engler*, 806 F.2d 425, 435 (3d Cir. 1986), *cert. denied*, 481 U.S. 1019 (1987). Even assuming that this requirement is met here, *Lambert* is nevertheless unavailing to Mr. Hutzell if his lack of awareness of the prohibition was objectively unreasonable. *See Lambert*, 355 U.S. at 229, holding that "proof of the probability of ... knowledge [of the prohibition's content] and subsequent

failure to comply are necessary before a conviction under the [applicable law] can stand."

The district court observed (correctly, we believe) that an individual's domestic violence conviction should itself put that person on notice that subsequent possession of a gun might well be subject to regulation. *See generally United States v. Mitchell*, 209 F.3d 319, 323-24 (4th Cir. 2000). We also agree with the observation in *United States v. Beavers*, 206 F.3d 706, 710 (6th Cir. 2000), *cert. denied*, 120 S. Ct. 1989 (2000), that "it should not surprise anyone that the government has enacted legislation in an attempt to limit the means by which persons who have a history of domestic violence might cause harm in the future." Although an individual's right to bear arms is constitutionally protected, *see United States v. Miller*, 307 U.S. 174, 178-79 (1939), the possession of a gun, especially by anyone who has been convicted of a violent crime, is nevertheless a highly regulated activity, and everyone knows it.

No one can reasonably claim, we think, to be unaware of the current level of concern about domestic violence; it is the subject of daily news reports and other media attention. There is evidence, in addition, that § 922(g)(9) was the subject of considerable public scrutiny and discussion both before and after its enactment. At any rate, in the present social circumstances, we believe that it is simply disingenuous for Mr. Hutzell to claim that his conviction under § 922(g)(9) involved the kind of unfair surprise that the fifth amendment prohibits.

II.

At sentencing, Mr. Hutzell moved for a downward departure from the applicable federal guidelines range on the ground that he had no reason to believe that his conduct constituted a crime. His contention was that his alleged lack of notice left him with an "incomplete defense" analogous to the "imperfect defenses" that are sometimes present when a defendant pleads coercion or duress as a defense. Such circumstances may be the basis for a downward departure. *See* U.S.S.G. § 5K2.12 (policy statement).

-4-

Assuming, without deciding, that the proposed analogy is apt, we see no abuse of discretion in the district court's refusal to depart. *See Koon v. United States*, 518 U.S. 81, 100 (1996). It was well within the district court's discretion to decide that there was nothing about the facts of this case that take it outside the heartland of § 922(g)(9) cases. Indeed, the present case appears to us to be entirely run-of-the-mill. Nothing about the circumstances of Mr. Hutzell's offense afforded him less notice than any other offender would have had with respect to the lawfulness of the conduct in question. Mr. Hutzell's case is by definition, therefore, not outside the heartland of such offenses.

III.

For the foregoing reasons, we affirm the judgment of the district court.

BENNETT, Chief District Judge, dissenting.

When should ignorance of the law be an excuse from criminal liability? John Selden remarked, "Ignorance of the law excuses no man; not that all men know the law, but because it is an excuse every man will plead, and no man can tell how to confute him." TABLE TALK-LAW 61 (3d ed. 1716). Yet, I believe that, in some cases—and more particularly, in the case now before this court—the Fifth Amendment right to due process requires that ignorance of the law stand as an excuse. Furthermore, I believe that the narrow recognition of the "ignorance of the law defense" by the United States Supreme Court demonstrates that, even though every man may plead ignorance of the law, unwarranted claims to that defense can be confuted.

By dissenting from the majority opinion, I do not mean to suggest that I condone Mr. Hutzell's conduct in any way. I find that Mr. Hutzell's conduct in wielding a firearm during a domestic dispute was egregious, plainly criminal conduct and that such conduct should have led Mr. Hutzell to expect serious consequences. I do not agree, however, that due process permits one of those consequences to be Mr. Hutzell's

conviction under 18 U.S.C. § 922(g)(9) and imprisonment under 18 U.S.C. § 924(a)(2) for possession of a firearm after he had been convicted of a misdemeanor offense of domestic violence.  I dissent from the majority opinion, because I conclude that, to satisfy due process, it is not enough for the government to prove that a defendant charged with "knowingly violating" 18 U.S.C. § 922(g)(9) had knowledge of his conduct, or even had knowledge that his conduct at the time of the offense was in some way illegal or subject to government scrutiny.  Instead, I conclude that due process requires that the government prove that the defendant knew or should have known of the requirements of § 922(g)(9) and, despite such knowledge, failed to conform his conduct to the law.  There is no such proof in Mr. Hutzell's case.

## I.  STATUTORY INTERPRETATION
### A.  The Language Of The Statute

Section 922(g)(9) of Title 18, under which Mr. Hutzell was convicted, states no *mens rea* requirement at all; instead, it merely prohibits certain conduct, as follows: "It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to . . . possess in or affecting commerce, any firearm or ammunition[.]"  18 U.S.C. § 922(g)(9).  The *mens rea* requirement for a violation of § 922(g)(9) is stated in a separate "penalty provision," § 924(a)(2). *See United States v. Farrell*, 69 F.3d 891, 893 (8th Cir. 1995), *cert. denied*, 516 U.S. 1181 (1996).  That provision states the following:  "Whoever *knowingly violates* subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."  18 U.S.C. § 924(a)(2) (emphasis added).  It would seem that the plain language of § 924(a)(2)—which establishes penalties only for a person who "knowingly violates" § 922(g)(9)—requires proof that the defendant knew that the conduct proscribed by § 922(g)(9) is illegal before the defendant can be convicted of violating § 922(g)(9).

That is not, however, the interpretation given to these statutes by the district court.  Rather, the district court concluded that proof of Mr. Hutzell's knowledge or

awareness of the *facts* supporting his indictment was sufficient to establish a "knowing violation" of § 922(g)(9), and I must perforce agree that the district court's interpretation is in accord with precedent of this circuit.

## B. Eighth Circuit Precedent

This court has interpreted "knowing violation" requirements as requiring only knowledge of acts constituting the offense, not knowledge of the law, in several recent decisions. For example, in *United States v. Sinskey*, 119 F.3d 712 (8th Cir. 1997), which construed provisions of the Clean Water Act (CWA) establishing criminal penalties for one who "knowingly violates" certain provisions, the court observed that "'knowingly' normally means acting with an awareness of one's actions." *Sinskey*, 119 F.3d at 716. The court explained, "In construing other statutes with similar language and structure, that is, statutes in which one provision punishes the 'knowing violation' of another provision that defines the illegal conduct, we have repeatedly held that the word 'knowingly' modifies the acts constituting the underlying offense." *Id.* at 715 (citing *Farrell*, 69 F.3d at 893, and *United States v. Hern*, 926 F.2d 764, 766-69 (8th Cir. 1991)). The court therefore concluded that a "knowing violation" of 33 U.S.C. § 1319(c)(2)(A) of the CWA requires only knowledge of the underlying conduct. *Id.* at 715-16. Precisely the same situation obtains here: One provision, § 924(a)(2), punishes the "knowing violation" of another provision that defines the illegal conduct, § 922(g)(9). Thus, I am constrained to agree that the word "knowingly" in the context at issue here modifies the acts constituting the underlying offense. *See Sinskey*, 119 F.3d at 715.

Furthermore, in *Farrell*, 69 F.3d at 893, upon which the decision in *Sinskey* relied, this court interpreted the same "knowing violation" provision at issue here, 18 U.S.C. § 924(a)(2), albeit in relation to conduct proscribed by § 922(o). *See Farrell*, 69 F.3d at 893. This court recognized the "plausibility" of a "plain language" argument that § 924(a)(2) requires knowledge that proscribed conduct is illegal, but nevertheless concluded that the "knowingly violates" language of § 924(a)(2) must be "read into"

the provisions of § 922 that define offenses, so that "knowingly" modifies only the underlying conduct. *Farrell*, 69 F.3d at 893. Therefore, the court concluded that §§ 922 and 924 "do not require knowledge of the law nor an intent to violate it," but only knowledge of the conduct constituting the offense. *Id.* In *Farrell*, the defendant attempted to distinguish statutes prohibiting "knowing violations" from the statute at issue in *United States v. Udofot*, 711 F.2d 831, 836 (8th Cir.), *cert. denied*, 464 U.S. 896 (1983), on the ground that "knowingly" in the statute at issue in *Udofot* plainly modified the conduct element, "delivery" of a firearm, whereas "knowingly" in § 924(a)(2) instead modifies "violates." *See Farrell*, 69 F.3d at 893. I also find this difference in the "plain language" of the two kinds of provisions to be an appealing basis for distinguishing *Udofot*, but I am bound by the conclusion of the court in *Farrell* that, notwithstanding these differences, neither kind of "knowledge" provision requires knowledge of the law. *See Farrell*, 69 F.3d at 893.

In the earlier of the cases relied upon in *Sinskey*, *United States v. Hern*, 926 F.2d 764 (8th Cir. 1991), this court interpreted "knowing violation" provisions of two other subsections of § 924, §§ 924(a)(1) and (a)(3). The court arrived at the same conclusion as to these two subsections later reached by the courts in *Sinskey* and *Farrell* concerning statutes with "knowing violation" requirements, that is, that knowledge of the law was not required. *See Hern*, 926 F.2d at 766-69. Thus, under the law of this circuit, the district court below correctly concluded that the "knowing violation" language of the statutes under which Mr. Hutzell was convicted will not support a "knowledge of the law" requirement for a conviction.

### C. Other Circuits
### 1. Majority decisions
Indeed, the district court's interpretation of the "knowing violation" language of § 924(a)(2) is in accord with every majority opinion of a Circuit Court of Appeals to address the application of that language to offenses under either § 922(g)(9) or the comparable provision in § 922(g)(8), which prohibits possession of a firearm by a

person who is subject to a domestic violence restraining order. *See* 18 U.S.C. § 922(g)(8). Every such decision has concluded that a conviction does not require proof that the defendant knew or should have known of the requirements of the law. *See United States v. Mitchell*, 209 F.3d 319, 322 (4th Cir. 2000) (rejecting a statutory interpretation argument for a "knowledge of the law" requirement for a violation of § 922(g)(9), based on the language of § 924(a)(2), because such a requirement was not in accord with *Bryan v. United States*, 524 U.S. 184, 192 (1998)), *petition for cert. filed* (June 7, 2000) (No. 99-9895); *United States v. Beavers*, 206 F.3d 706, 708 (6th Cir. 2000) (considering the meaning of a "knowing violation" of § 922(g)(9), noting that, "[i]n an analogous context, other circuits have held that the term 'knowingly' only requires that the accused know that he possessed a firearm"), *cert. denied*, ___ U.S. ___, 120 S. Ct. 1989 (2000); *United States v. Bostic*, 168 F.3d 718, 722-23 (4th Cir.) (contrasting "willfully" and "knowingly" to conclude that a "knowing violation" of § 922(g)(8) under § 924(a)(2) "does not include a requirement that the defendant be aware of the illegality of his conduct"), *cert. denied*, 527 U.S. 1029 (1999).

### 2. *The Wilson dissent*

Similarly, I regret that I cannot embrace wholeheartedly Chief Judge Posner's conclusion, in his dissenting opinion in *United States v. Wilson*, 159 F.3d 280 (7th Cir. 1998), *cert. denied*, 527 U.S. 1024 (1999), that "there is enough room in the statutory language to [impose a knowledge of the law requirement] without having to trundle out the heavy artillery of constitutional law." *Wilson*, 159 F.3d at 293 (Posner, C.J., dissenting). Chief Judge Posner concluded that the "knowing violation" language of § 924(a)(2) should be interpreted "to require the government to prove that the violator [of § 922(g)(8)] knew he was committing a crime," because "[t]his is the standard device by which the courts have avoided having to explore the outer boundaries of the constitutional requirement of fair notice of potential criminal liability." *Id.* at 293. Chief Judge Posner's dissent is the principal authority upon which Hutzell relies.

One difficulty with Chief Judge Posner's analysis is that, in two of the cases on which he relied, *Ratzlaf v. United States*, 510 U.S. 135 (1994), and *Cheek v. United States*, 498 U.S. 192 (1991), the language of the statutes the Supreme Court held required knowledge of the law required proof of a "willful" violation, not simply a "knowing" one. *See Ratzlaf*, 510 U.S. at 136 (interpreting "willfully violating" language in 31 U.S.C. § 5322, the penalty provision for 31 U.S.C. § 5324, which prohibits illegal structuring of cash transactions exceeding $10,000); *Cheek*, 498 U.S. at 193-94 (interpreting "willfully attempts" to evade income taxes under 26 U.S.C. § 7201 and "willfully fails" to file a tax return under 26 U.S.C. § 7203). Only *Liparota v. United States*, 471 U.S. 419 (1985), involved a "knowingly" requirement, but there, the "knowingly" requirement was stated in the statute defining the offense, not in a separate penalty provision establishing penalties for "knowing violations" of the substantive offense statute. *See Liparota*, 471 U.S. at 423-24. The Court in *Liparota* interpreted the "knowingly" requirement, in light of the text and structure of the statute and companion provisions, to apply to both knowledge of conduct and knowledge of the law. *See id.* at 423-25; *see also Bryan*, 524 U.S. at 193 n.15 (stating that in *Liparota* the Court had "concluded that both the term 'knowing' in § 2024(c) and the term 'knowingly' in § 2024(b)(1) of Title 7 literally referred to knowledge of the law as well as knowledge of the relevant facts"). Therefore, in my view, none of the Supreme Court precedents upon which Chief Judge Posner relied supports a statutory interpretation of a "knowing violation" requirement in § 924(a)(2) for a § 922(g) offense as requiring "knowledge of the law."

Moreover, as noted above, a knowledge of the law requirement based on statutory interpretation of "knowing violation" language cannot stand in the face of precedent of this circuit interpreting identical language. *See Sinskey*, 119 F.3d at 715-16; *Farrell*, 69 F.3d at 893; *Hern*, 926 F.2d at 766-69. Nor can it stand in the face of recent interpretation by the Supreme Court of a "knowingly" requirement. In *Bryan v. United States*, 524 U.S. 184 (1998), the Supreme Court explained,

[T]he term "knowingly" does not necessarily have any reference to a culpable state of mind or to knowledge of the law. As Justice Jackson correctly observed, "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." Thus, in *United States v. Bailey*, 444 U.S. 394, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980), we held that the prosecution fulfills its burden of proving a *knowing violation* of the escape statute "if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." *Id.*, at 408, 100 S. Ct., at 634. And in *Staples v. United States*, 511 U.S. 600, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994), we held that a charge that the defendant's possession of an unregistered machinegun was unlawful required proof "that he knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." *Id.*, at 602, 114 S. Ct., at 1795. It was not, however, necessary to prove that the defendant knew that his possession was unlawful. *See Rogers v. United States*, 522 U.S. 252, ___, 118 S. Ct. 673, 674-676, 139 L. Ed. 2d 686 (1998). *Thus, unless the text of the statute dictates a different result, the term "knowingly" merely requires proof of knowledge of the facts that constitute the offense.*

*Bryan*, 524 U.S. at 192 (emphasis added) (footnotes omitted).

### D. Conclusion On Statutory Interpretation

In light of these precedents, Congress cannot be construed to have intended that the "knowing violation" language of § 924(a)(2), in relation to a violation of § 922(g) offense, was meant to impose a "knowledge of the law" requirement. Consequently, I cannot adopt the statutory interpretation argument of Chief Judge Posner in *Wilson*, or otherwise conclude, as a matter of statutory interpretation, that a "knowing violation" of § 922(g)(9) requires knowledge of the law. Thus far I agree with the majority's disposition of Hutzell's appeal.

## II. CONSTITUTIONAL REQUIREMENTS

Instead, I believe that the battle over whether or not the government was required to prove that Mr. Hutzell knew or should have known that the law prohibited his possession of a firearm after a misdemeanor conviction for domestic violence must be fought on due process grounds. While I must reject the dissenting opinion in *Wilson* as supporting a *statutory interpretation* that § 922(g) offenses require proof that the defendant knew or should have known of the prohibitions of the statute, I can embrace much of the reasoning of Chief Judge Posner's dissent as supporting the argument that *due process* requires proof that the defendant knew or should have known of the prohibitions of § 922(g)(9). Even then, I do not rely exclusively on the dissent in *Wilson*, because I find that the basis for a due process requirement of knowledge of the law was set forth in the United States Supreme Court's decision in *Lambert v. California*, 355 U.S. 225 (1957). I therefore turn to my reading of *Lambert* and its progeny.

### A. Lambert And Its Progeny

#### 1. The Lambert decision

In *Lambert*, the Court considered the requirements for conviction of a person under a Los Angeles Municipal Code provision that made it unlawful for "any convicted person," elsewhere defined as a person convicted of a felony or an offense punishable as a felony in California, to be or remain in Los Angeles for a period of more than five days without registering with the Chief of Police. *Id.* at 226. During a seven-year period of residence in Los Angeles, the appellant was convicted of a felony offense, but only some years after that conviction, while still a resident of Los Angeles, was she charged with and convicted of failing to register, following her arrest on suspicion of another offense. *Id.* The appellant asserted that her conviction violated her right to due process of law under the United States Constitution. *Id.* at 227. The Supreme Court considered whether the appellant's due process rights had been violated where the appellant, like Mr. Hutzell, had no actual knowledge of her duty to comply

with the law in question, and where there was no showing of the probability of such knowledge. *Id.*

In the majority opinion in *Lambert*, written by Justice Douglas, the Court rejected the contention that a "vicious will" is necessary to constitute a crime, and further acknowledged that "[t]he rule that 'ignorance of the law will not excuse' . . . is deep in our law." *Id.* at 228. Nevertheless, the Court recognized that "due process places some limits" on the exercise of governmental police powers in defining offenses. *Id.* at 228.

More specifically, the Court was persuaded that due process limits had been passed where the conduct of the person who ran afoul of the law had been "wholly passive—mere failure to register," because such conduct "is unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed." *Id.* The Court reasoned as follows:

> Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act. Recent cases illustrating the point . . . involved only property interests in civil litigation. But the principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case.

*Lambert*, 355 U.S. at 228 (internal citations omitted). The Court in *Lambert* was persuaded to recognize a due process exception to the maxim that "ignorance of the law will not excuse" by the fact that violation of the registration law in question was "unaccompanied by any activity whatever, mere presence in the city being the test.

Moreover, circumstances which might move one to inquire as to the necessity of registration are completely lacking," and the appellant was given no opportunity to register upon first becoming aware of her duty to register. *Id.* at 229. The Court concluded as follows:

> We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. As Holmes wrote in The Common Law, 'A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear.' *Id.*, at 50. Its severity lies in the absence of an opportunity either to avoid the consequences of the law or to defend any prosecution brought under it. Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community.

*Lambert*, 355 U.S. at 229-30.

Thus, *Lambert* establishes the following prerequisites for a "due process" exception to the rule that ignorance of the law is no excuse: (1) the conduct of the person who runs afoul of the law must be "wholly passive"; and (2) there must be an "absence of circumstances that should alert the doer to the consequences of his deed." *Id.* at 228; *compare United States v. Weiler*, 458 F.2d 474, 478 (3d Cir. 1972) ("The *Lambert* decision rested on three factors: (1) the crime was one of omission, not commission, (2) the situation to which the ordinance addressed itself was not such as might move one to inquire as to the applicable law and (3) the purpose of the statute was solely to compile a list which might assist law enforcement agencies."). If these prerequisites are satisfied, the Court held that, to satisfy due process, "actual

-14-

knowledge of the [requirements of the law] or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand." *Lambert*, 355 U.S. at 229.

### 2.     *The Freed decision*

Justice Douglas, the author of the majority opinion in *Lambert*, subsequently rejected application of the "*Lambert* exception" to a statute prohibiting the unregistered possession of hand grenades in *United States v. Freed*, 401 U.S. 601 (1971). Thus, *Freed* is instructive on the scope of the "*Lambert* exception." In *Freed*, Justice Douglas distinguished *Lambert* as follows:

> Being in Los Angeles was not per se blameworthy. The mere failure to register, we held, was quite "unlike the commission of acts, or the failure to act under circumstances that should alert the doer to the consequences of his deed." [*Lambert*, 355 U.S.] at 228, 78 S. Ct., at 243. The fact that the ordinance was a convenient law enforcement technique did not save it. . . .
>
> The present case is [not] in the category . . . of *Lambert*. . . . This is a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act. They are highly dangerous offensive weapons, no less dangerous than the narcotics involved in *United States v. Balint*, 258 U.S. 250, 254, 42 S. Ct. 301, 303, 66 L. Ed. 2d 604, where a defendant was convicted of sale of narcotics against his claim that he did not know the drugs were covered by a federal act. We say with Chief Justice Taft in that case:
>
>> "It is very evident from reading of it that the emphasis of the section is in securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the Government and that it merely uses a criminal penalty

to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic. Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him.  Congress weighed the possible injustice of subjecting the innocent seller to a penalty against the evil of exposing innocent purchasers to danger from the drug, and concluded that the latter was the result preferably to be avoided."  *Id.*, at 253-254, 42 S. Ct., at 302-303.

*Freed*, 401 U.S. at 609-10.

### 3.  *Qualifications for the "Lambert exception"*

Reading *Lambert* and *Freed* together, it is apparent that a due process or "*Lambert* exception" to the rule that ignorance of the law is no excuse depends upon the following interrelated requirements:  The defendant's conduct must not only be (1) "wholly passive," *see Lambert*, 355 U.S. at 228, but also (2) must "not [be] *per se* blameworthy," *see Freed*, 401 U.S. at 609, and there must be (3) an "absence of circumstances that should alert the doer to the consequences of his deed," *see Lambert*, 355 U.S. at 228; furthermore, (4) the "injustice" to the defendant of disposing of a "knowledge of the law" requirement must not be outweighed by the benefit to the person the law is meant to protect, *see Freed*, 401 U.S. at 610 (quoting *Balint*, 258 U.S. at 253-54).  Only in such a narrowly circumscribed situation, then, does due process require proof of the defendant's "actual knowledge of the [requirements of the law] or proof of the probability of such knowledge and subsequent failure to comply . . . before a conviction under the ordinance can stand." *Lambert*, 355 U.S. at 229.

### B. *Section 922(g)(9) And Due Process*

Are these requirements met by the statute at issue here?  I admit that section 922(g)(9) is not a "registration law," like the ordinance at issue in *Lambert*, but the due process requirement of "knowledge of the law" articulated in *Lambert* seems to me to be applicable to this statute.  Consideration of § 922(g)(9) in light of the qualifications for application of the "*Lambert* exception" will demonstrate the reasons for this conclusion.

#### 1.    *"Passive conduct"*

First, I must sort out what "conduct" of the defendant is pertinent to the first qualification for the "*Lambert* exception," the "passive conduct" requirement.  To my mind, the fact that the conviction that brought Mr. Hutzell within the purview of § 922(g)(9) preceded the enactment of the statute robs the prior act of domestic violence of any significance under the *Lambert* "passive conduct" test.  *See Lambert*, 355 U.S. at 228 (due process required knowledge of the law where the defendant's conduct was "wholly passive").  The Court in *Lambert* never suggested that the defendant's felony conviction—the conviction that established her obligation to register under the ordinance in question—was somehow "non-passive" conduct that barred her claim of a due process violation.  Nor did the Court consider the "passivity" or lack thereof of the criminal conduct that brought Lambert's failure to register to the attention of the Los Angeles police.  Rather, the Court's focus in *Lambert* was on whether the ordinance defining the offense required any conduct on the part of the defendant, noting that a violation of the registration law was "unaccompanied by any activity whatever, mere presence in the city being the test." *Lambert*, 355 U.S. at 229.  Thus, the proper focus here, to determine whether or not Mr. Hutzell's conduct was "passive" within the meaning of the "*Lambert* exception," is not on the circumstances that brought Mr. Hutzell within the purview of § 922(g)(9), nor is it on the circumstances in which it was discovered that Mr. Hutzell possessed a firearm.  The proper focus is instead whether the "test" for a violation of § 922(g)(9) is "unaccompanied by any activity whatever." *Id.*

Section 922(g)(9) defines an offense in terms of the defendant's "possession" of a firearm—not, for example, active conduct such as "use," "acquisition," or "transportation" of a firearm—after conviction of a misdemeanor domestic abuse offense. *See* 18 U.S.C. § 922(g)(9). In other words, "mere possession" of a firearm after conviction of a domestic violence offense, the "test" under § 922(g)(9), is "unaccompanied by any activity whatever," and such "mere possession" is therefore just as passive as "mere presence in the city" after a felony conviction. *Cf. Lambert*, 355 U.S. at 229. Consequently, the conduct defining the offense under § 922(g)(9) should be deemed to be "passive" under *Lambert*. *Id.*

### 2. *"Not per se blameworthy" conduct*

Furthermore, it certainly cannot be said that, in American society, being in possession of a firearm is "per se blameworthy." *See Freed*, 401 U.S. at 609. Rather, unlike possession of hand grenades, the prevalence of firearm possession is such that one *would* "be surprised to learn that possession of [firearms] is not an innocent act." *Freed*, 401 U.S. at 609; *see also Staples*, 511 U.S. at 610 ("[T]here is a long tradition of widespread lawful gun ownership by private individuals in this country."). Admittedly, like hand grenades, firearms can be used as "highly dangerous offensive weapons." *Freed*, 401 U.S. at 609. However, that is perhaps the *only* use for hand grenades, whereas it is far from the only, or usual, use for firearms in American society.

### 3. *Notice from circumstances*

There is also an "absence of circumstances that should alert the doer to the consequences of his deed" in this case. *See Lambert*, 355 U.S. at 228. I believe that Mr. Hutzell's continued possession of a firearm from a time when such possession was legal to a time when it was suddenly forbidden, without notice that his status as a person able to possess firearms had changed, did not constitute "circumstances which might move one to inquire as to the necessity of" conforming to new regulations. *Lambert*, 355 U.S. at 229. In contrast, I would suggest that acquisition of a firearm after a domestic violence conviction is a "circumstanc[e] which might move one to

inquire as to the necessity of" conforming to firearms laws, *see id.*, because acquisition of a firearm would bring one into renewed contact with registration and permit requirements for firearms. Similarly, transportation of a firearm across state lines may give rise to such a duty to inquire, at least if one has been convicted of, or indicted for, a serious offense, *see Weiler*, 458 F.2d at 478 (intentional transportation of a firearm across state lines by one convicted of, or indicted for, a serious crime is conduct that, by its nature, suggests the possibility of government regulation), although even transportation across state lines by one never convicted of or indicted for a felony may *not* suggest the possibility of government regulation.

Nor can the passage of § 922(g)(9) or "the present social circumstances," as asserted by the majority, constitute circumstances that would put a person on notice of the statute's prohibitions and potential applicability to him or her. This argument is based on the legal fiction—rarely supported by real-life experience—that mere passage of a law, or even public controversy at the time of its passage, provides notice of the law's existence or scope. Rather, the law in question here is so obscure that not only are most of the people to whom it might be applicable unaware of its existence, most state-court judges, those most involved in administration of domestic abuse statutes, appear to be unaware of it, and routinely fail to advise persons convicted of domestic abuse or subject to domestic abuse restraining orders of their potential liability for firearm possession under federal law. *See Wilson*, 159 F.3d at 294 (Posner, C.J., dissenting) (criticizing the Department of Justice for taking no steps to publicize § 922(g)(8) to state-court judges so that they could include appropriate warning language in domestic violence restraining orders) & *id.* at 295 (state-court judges would likely have welcomed advice to include warnings about § 922(g)(8) in their restraining orders, as such warnings would give their own orders "added teeth").

Nor do I believe that Mr. Hutzell's subsequent assault on his wife can constitute circumstances that would provide such notice of potential illegality as to obviate application of the "*Lambert* exception." Indeed, I believe that *Lambert*—at least

tacitly—rejects such bootstrapping. In *Lambert*, the defendant was charged with violating the registration ordinance after she was arrested on suspicion of another offense. *Lambert*, 355 U.S. at 226. Neither the majority nor the dissenters in *Lambert* suggested that the defendant's subsequent criminal conduct eliminated due process concerns, *i.e.*, somehow made the defendant aware of the probability of a criminal sanction for failure to register or eliminated the need for such an awareness.

### 4. *The balance of injustices*

Finally, *Freed* requires that the "injustice" to the defendant of disposing of a "knowledge of the law" requirement must not be outweighed by the benefit to the person the law is meant to protect. *See Freed*, 401 U.S. at 610 (quoting *Balint*, 258 U.S. at 253-54). I acknowledge—and support—the rationale for barring persons convicted of domestic violence offenses from possessing firearms. *See, e.g., United States v. Meade*, 175 F.3d 215, 226 (1st Cir. 1999) ("The dangerous propensities of persons with a history of domestic abuse are no secret, and the possibility of tragic encounters has been too often realized."). Nevertheless, unlike the situation in *Freed*, I do not believe that the balance of injustices can eliminate a due process requirement of "knowledge of the law" in the case of continued possession of a firearm after a conviction of a domestic violence offense: Here, the lack of knowledge on the part of a person who runs afoul of § 922(g)(9) is not outweighed by any benefit to the person the law is meant to protect, because, in such circumstances, § 922(g)(9) has done nothing to prevent "evils" to the person the statute is meant to protect. *Compare Freed*, 401 U.S. at 610 ("'Congress weighed the injustice of subjecting an innocent seller to a penalty against the evil of exposing innocent purchasers to danger from the drug and concluded that the latter was the result preferably to be avoided.'") (quoting *Balint*, 258 U.S. at 254). Thus, the salutary purpose of § 922(g)(9)—taking firearms out of the hands of convicted domestic abusers—cannot be served in the absence of notice to the persons who come within the scope of the statute that their continued possession of firearms is prohibited. *Accord Wilson*, 159 F.3d at 294 (Posner, C.J., dissenting) (criticizing the Department of Justice for taking no steps to publicize

§ 922(g)(8) to state-court judges so that they could include appropriate warning language in domestic violence restraining orders) & *id.* at 295 (state-court judges would likely have welcomed advice to include warnings about § 922(g)(8) in their restraining orders, as such warnings would give their own orders "added teeth"). In the absence of a "knowledge of the law" requirement, conviction of a § 922(g)(9) offense is merely a prosecutorial "bonus," or "slam-dunk" conviction that provides an add-on or substitute penalty, but does nothing to eliminate the serious danger armed domestic abusers undoubtedly can pose to their domestic partners.

### 5.    *Summary*

I conclude that prohibited possession of a firearm under § 922(g)(9)—at least in Mr. Hutzell's case—is "unaccompanied by any activity whatever," mere possession of a firearm after conviction of a domestic violence offense being the test. *Cf. Lambert*, 355 U.S. at 229. "Mere possession" of a firearm after conviction of a misdemeanor domestic violence offense is just as passive as "mere presence in the city" after a felony conviction, and therefore would be deemed to be "passive" under *Lambert*. Furthermore, such firearm possession is "not *per se* blameworthy," *see id.*; *Freed*, 401 U.S. at 609, because "there is a long tradition of widespread lawful gun ownership by private individuals in this country." *See Staples*, 511 U.S. at 610. Because neither possession of a firearm nor prior conviction of a domestic violence offense by the possessor of a firearm suggests otherwise, there is an "absence of circumstances that should alert the doer" that his possession of a firearm may be subject to government regulation or scrutiny. *See Lambert*, 355 U.S. at 228. Finally, the "injustice" to the defendant of disposing of a "knowledge of the law" requirement for the offense defined by § 922(g)(9) is not outweighed by the benefit to the person the law is meant to protect. *See Freed*, 401 U.S. at 610 (quoting *Balint*, 258 U.S. at 253-54). In these narrowly circumscribed conditions, as contemplated by *Lambert* and *Freed*, I conclude that due process *does* require proof of the defendant's "actual knowledge of the [prohibitions of § 922(g)(9)] or proof of the probability of such knowledge and

subsequent failure to comply . . . before a conviction under [§ 922(g)(9)] can stand." *Lambert*, 355 U.S. at 229.

### C. Viability of The "Lambert Exception"

I recognize that *Lambert* has not enjoyed wide-ranging application. Indeed, the majority decision in *Lambert* was described by three of the four dissenting justices in unprepossessing terms as a decision destined to be "an isolated deviation from the strong current of precedents—a derelict on the waters of the law." *Lambert*, 355 U.S. at 232 (Frankfurter, J., joined by Harlan, J., and Whittaker, J., dissenting). I also acknowledge that the district court's rejection of the "*Lambert* exception" for offenses under § 922(g)(9)—that is, rejection of a due process requirement that the government prove that the defendant knew or should have known of the prohibitions of § 922(g)(9)—is in keeping with every majority decision of a Circuit Court of Appeals to address the question, as to either § 922(g)(9), the statute now before this court, or its companion provision, § 922(g)(8). *See Mitchell*, 209 F.3d at 323-24 (§ 922(g)(9)); *Beavers*, 206 F.3d at 708-10 (§ 922(g)(9)); *United States Reddick*, 203 F.3d 767, 769-771 (10th Cir. 2000) (§ 922(g)(8)); *United States v. Baker*, 197 F.3d 211, 216-17 & 218-220 (6th Cir. 1999) (§ 922(g)(8)), *cert. denied*, ___ U.S. ___, 120 S. Ct. 1262 (2000); *United States v. Meade*, 175 F.3d 215, 225-226 (1st Cir. 1999) (although the defendant was charged with violating both § 922(g)(8) and § 922(g)(9), the comparable due process challenge was leveled only against § 922(g)(8)); *Bostic*, 168 F.3d at 722 (§ 922(g)(8)); *Wilson*, 159 F.3d at 289 (§ 922(g)(8)). Although this list is impressive, I do not find that the decisions listed are ultimately persuasive.

### 1.     *Rejection based on actual knowledge of the statutory prohibition*

I have no quibble at all with any decision upholding the conviction of a defendant who *had* actual knowledge of the proscription in 18 U.S.C. § 922(g)(9), or the related provision, § 922(g)(8). *See, e.g., Baker*, 197 F.3d at 219 (the defendant received adequate notice of the requirements of § 922(g)(8), because "[e]ach of the domestic violence protection orders entered against him featured a bold print warning that he

could not lawfully possess firearms"). In such a case, due process has clearly been satisfied, because the defendant was aware of the prohibitions of the pertinent law, and still failed to conform his conduct to it. *Cf. Bryan v. United States*, 524 U.S. 184, 196 (1998) (concluding that "[t]he danger of convicting individuals engaged in apparently innocent activity . . . is not present [where the defendant] knew that his conduct was unlawful").

## 2. *Rejections based on constructive knowledge*

However, I am not convinced that the "*Lambert* exception" is evaded as easily as the district court decision below or the consonant federal appellate decisions would suggest, where the defendant has no actual knowledge of the prohibitions of § 922(g)(9). In this case, the district judge concluded that Mr. Hutzell was "not prevent[ed] . . . from learning of the statute by other means after its enactment," and that, by engaging in conduct that resulted in his domestic violence conviction, he had "removed himself from the class of ordinary citizens." Other courts have shown similar ingenuity in avoiding application of the "*Lambert* exception" to the rule that "ignorance of the law will not excuse," as cases rejecting application of the exception to § 922(g)(9) or § 922(g)(8) demonstrate. These decisions conclude that due process is satisfied, and *Lambert* distinguished, because the defendant's prior misdemeanor domestic violence conviction, or imposition of a domestic violence restraining order against him, removed him from the class of ordinary citizens sufficiently that he could not reasonably expect to be free from regulation when possessing a firearm. *See Mitchell*, 209 F.3d at 323-24; *Beavers*, 206 F.3d at 710; *Reddick*, 203 F.3d at 770; *Baker*, 197 F.3d at 220; *Meade*, 175 F.3d at 225-26; *Bostic*, 168 F.3d at 722-23; *Wilson*, 159 F.3d at 288-89.

However, I believe that just because these decisions "repeated the mistake does not transform error into truth, but illustrates the potential for future mischief that the error entails." *Dickerson v. United States*, ___ U.S. ___, ___, ___ S. Ct. ___, ___, 2000 WL 807223, *20 (June 26, 2000) (Scalia, J., joined by Thomas, J., dissenting).

This is so, because the numerous decisions relying on the argument that past misconduct provides adequate notice of the prohibition on firearm possession in § 922(g)(9) perpetuate a disingenuous legal fiction, which is deemed to gain "truth" merely by repetition, but which is contrary to reality. As Chief Judge Posner observed, "[A] reasonable opportunity [to know the law] doesn't mean being able to go to the local law library and read Title 18. It would be preposterous to suppose that someone from [the defendant's] milieu is able to take advantage of such an opportunity." *Wilson*, 159 F.3d at 295 (Posner, C.J., dissenting). Furthermore, it is unrealistic to suppose that a person's awareness that a past (or present) domestic assault is illegal would make such a person aware that his possession of a firearm after a domestic violence conviction was illegal or even subject to regulation. What such a person is likely to understand is that his conduct *toward his domestic partner* is subject to government scrutiny, not continued possession of a firearm. *See id.* ("The fact that the restraining order contained no reference to guns may have lulled him into thinking that, as long as he complied with the order and stayed away from his wife, he could carry on as before.").

Moreover, as I explained above, in Section II.B.3, I believe that *Lambert* itself forecloses bootstrapping of either a past or present incident of criminal conduct into an awareness of the probability of regulation of otherwise lawful conduct, because in *Lambert*, neither the defendant's prior felony conviction nor the criminal conduct for which she was arrested at the time that her failure to register was discovered was considered by the Court as sufficient to put the defendant on notice of the probability of a registration requirement. *See Lambert*, 355 U.S. at 225-26. Therefore, even in the face of the overwhelming consistency with which courts have rejected the "*Lambert* exception" as imposing a "knowledge of the law" requirement for § 922(g)(9) and § 922(g)(8) offenses, I maintain that due process requires "knowledge of the law" before a defendant may be convicted of an offense under § 922(g)(9).

### 3.	*The Bryan decision*

Although I believe that *Lambert* provides the basis for a due process requirement of "knowledge of the law" in this case, I note that courts rejecting such a requirement have often relied on *Bryan v. United States*, 524 U.S. 184 (1998). In *Bryan*, the Supreme Court considered the circumstances in which a "willfulness" requirement had been construed to require knowledge of the law, as opposed to a more general knowledge of illegality or "evil-meaning mind." *See Bryan*, 524 U.S. at 193-94. Thus, *Bryan* considered a "knowledge of the law" requirement as a matter of statutory interpretation—and furthermore, statutory interpretation of "willfulness" language not present here—not whether due process imposed such a requirement. Nevertheless, I feel bound to consider the applicability of a "*Bryan* exception" to the due process argument raised by Mr. Hutzell, because other courts have so regularly considered *Bryan* in this context.

### a.	The "Bryan exception"

In *Bryan*, the court wrote,

> In certain cases involving willful violations of the tax laws, we have concluded that the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating. *See, e.g., Cheek v. United States*, 498 U.S. 192, 201, 111 S. Ct. 604, 610, 112 L. Ed. 2d 617 (1991). Similarly, in order to satisfy a willful violation in *Ratzlaf*, we concluded that the jury had to find that the defendant knew that his structuring of cash transactions to avoid a reporting requirement was unlawful. *See* 510 U.S., at 138, 149, 114 S. Ct., at 657-658, 663. Those cases, however, are readily distinguishable. Both the tax cases and *Ratzlaf* involved *highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct*. As a result, we held that these statutes "carv[e] out an exception to the traditional rule" that

> ignorance of the law is no excuse and require that the defendant have knowledge of the law.

*Bryan*, 524 U.S. at 194-95 (emphasis added) (footnotes omitted). Although the Court in *Bryan* identified circumstances qualifying for an exception to the rule that ignorance of the law is no excuse, the Court did not find such circumstances existed in the case then before it. Rather, the Court in *Bryan* found that "the willfulness requirement of § 924(a)(1)(D) does not carve out an exception to the traditional rule that ignorance of the law is no excuse; knowledge that the conduct is unlawful is all that is required." *Id.* at 195-96. The Court reached this conclusion, because it reasoned that "[t]he danger of convicting individuals engaged in apparently innocent activity that motivated our decisions in the tax cases and *Ratzlaf* is not present here because the jury found that this petitioner knew that his conduct was unlawful," even if he did not know about the statute that prohibited "willfully" dealing in firearms without a federal license. *Id.* at 196.

### b.      The dissent in Bryan

The three dissenting justices in *Bryan* criticized the majority's conclusion that it is enough if the defendant knows, in a general way, that his conduct is unlawful, rather than requiring proof that the defendant must be aware that the *actus reus* punished by the statute—dealing in firearms without a federal license—is illegal. *See Bryan*, 524 U.S. at 202 (Scalia, J., joined by Rehnquist, C.J., and Ginsburg, J., dissenting). They argued, "Once we stop focusing on the conduct the defendant is actually charged with (*i.e.*, selling guns without a license), [we] see no principled way to determine what law the defendant must be conscious of violating." *Id.* at 202-03. The dissenters concluded that "it would be more reasonable to presume that, when Congress makes ignorance of the law a defense to a criminal prohibition, it ordinarily means ignorance of the unlawfulness of the specific conduct punished by that criminal prohibition." *Id.* at 203.

### c. *Appellate applications of Bryan*

Every appellate decision rejecting a due process requirement of knowledge of the law for violations of § 922(g)(9) or § 922(g)(8) has done so on the ground that the defendant's prior act of domestic violence deprived him of a "*Bryan* exception" by removing him from the class of ordinary or innocent citizens. *See Beavers*, 209 F.3d at 323-24; *Reddick*, 203 F.3d at 771; *Baker*, 197 F.3d at 220; *Meade*, 175 F.3d at 226; *Bostic*, 168 F.3d at 722-23; *Wilson*, 159 F.3d at 288-89. I think these decisions overreach the meaning of the majority decision in *Bryan*.

In *Bryan*, the defendant's knowledge of the illegality of the *actus reus* that violated the specific statute under which he was charged—dealing in firearms without a federal license—apparently was not required. *See Bryan*, 524 U.S. at 196; *and compare id.* at 202 (Scalia, J., joined by Rehnquist, C.J., and Ginsburg, J., dissenting). However, according to the majority, his conduct was not "innocent," because he was well aware that he was engaging in unlawful transactions in firearms. *See id.* at 189 & n.8; *see also id.* at 195-96. As the majority observed, "Why else would he make use of straw purchasers and assure them that he would shave the serial numbers off the guns? Moreover, the street corner sales are not consistent with a good-faith belief in the legality *of the enterprise*." *Id.* at 189 n.8 (emphasis added). Thus, although one wonders what result the majority would have reached in some of the scenarios raised by the dissenters, *see id.* at 202 (knowledge of illegality premised only on double parking, speeding, or sales in violation of city business licensing or sales tax ordinances), the majority did not, as the minority suggests, rely on "a *mens rea* so 'general' that it is entirely divorced from the *actus reus* this statute was enacted to punish." *Id.* Rather, the *mens rea* that deprived the petitioner in *Bryan* of an "apparently innocent activity" exception to the rule that ignorance of the law is no excuse was his *mens rea* married to the *criminal act* of dealing in firearms, even if it did not specifically relate to the *actus reus* of dealing in firearms *without a federal license*. *Id.* at 195. In other words, although the petitioner in *Bryan* lacked knowledge of the law that prohibited dealing in firearms without a federal license, he could not

harbor "a good-faith belief in the *legality of the enterprise*" of dealing in firearms. *Id.* at 189 n.8 (emphasis added).

### d.        Application of a "Bryan exception" to Hutzell

Assuming that the "*Bryan* exception" states a due process standard—that is, assuming that it states a due process requirement of "knowledge of the law" for convictions under "highly technical statutes that presen[t] the danger of ensnaring individuals engaged in apparently innocent conduct"—and construing such a standard to be in accord with *Lambert*, a conviction under § 922(g)(9) (and presumably also § 922(g)(8), which is not now before this court) would fit these requirements. Although § 922(g)(9) is not "highly technical," I would agree with Chief Judge Posner that it is certainly obscure, which "comes to the same thing, as we know from *Lambert*." *See Wilson*, 159 F.3d at 295 (Posner, C.J., dissenting). Furthermore, it does "presen[t] the danger of ensnaring individuals engaged in apparently innocent conduct," because possession of firearms in America is apparently innocent conduct. *See, e.g., Staples*, 511 U.S. at 610 ("[T]here is a long tradition of widespread lawful gun ownership by private individuals in this country.").

The defendant's prior conviction of a domestic violence offense, or even his knowing involvement in domestic violence at the time that his unlawful possession of a firearm was discovered, does not establish that "[t]he danger of convicting individuals engaged in apparently innocent activity . . . is not present here" because no jury could find "that this [defendant] knew that his conduct [of merely possessing a firearm] was unlawful." *Bryan*, 524 U.S. at 196. This is so, even though the defendant could not reasonably suppose that his conduct in assaulting a domestic partner was lawful: The *mens rea* for the domestic violence offense relates to a criminal act, but it does not relate to the same operative facts giving rise to an offense under § 922(g)(9), that is, it does not relate to the *actus reus* of possession of a firearm after a conviction of a domestic violence offense. Thus, the defendant could still harbor "a good-faith belief in the legality of the [firearm possession]." *Id.* at 189 n.8. Not even knowing use of

the firearm during a domestic assault, in my view, would provide the requisite *mens rea* for a knowing violation of § 922(g)(9), because the *mens rea* in that situation still would go to knowledge that active *use* of a firearm against another person is or probably is illegal, not to the *actus reus* of a § 922(g)(9) offense, which is mere passive *possession* of the firearm after conviction of a misdemeanor domestic violence offense.

### 4.      An exception without limits?

Finally, I must consider whether recognizing the "*Lambert* exception" as applicable to a conviction under § 922(g)(9), and therefore requiring proof of "knowledge of the law" to obtain a conviction, would create an "ignorance of the law" defense that "every man will plead, and no man can tell how to confute him." SELDEN, TABLE TALK-LAW at 61. Obviously, the defense will be unavailable to any person who receives actual notice that his continued possession or acquisition of a firearm after a misdemeanor conviction for domestic abuse is prohibited. *See, e.g., Baker*, 197 F.3d at 219 (the defendant received adequate notice of the requirements of § 922(g)(8), because "[e]ach of the domestic violence protection orders entered against him featured a bold print warning that he could not lawfully possess firearms"). Furthermore, as I read *Lambert* and *Freed*, the conditions under which a defense of ignorance of the law would otherwise be available are so narrowly circumscribed, *see supra* at Section II.A.3, that few defendants charged with a criminal offense would be warranted in asserting such a defense.

### III.  CONCLUSION

I do not agree that *Lambert* is nothing more than a "derelict upon the waters of the law," although few other decisions have sailed in its course. Rather, *Lambert* provides the narrow, reasoned exception that proves the rule that ignorance of the law is (generally) no excuse. As to 18 U.S.C. § 922(g)(9), I believe that due process requires us to sail the course charted in *Lambert*: Due process requires proof that the defendant knew or reasonably should have known that his possession of a firearm after a conviction for a misdemeanor crime of domestic violence was prohibited in order to

sustain a conviction under § 922(g)(9). No such knowledge or probability of knowledge was shown in Mr. Hutzell's case. Therefore, I would hold that his conviction should be overturned on due process grounds.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.