**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Antonio HINOSTROZA, Defendant–Appellant.**

No. 01–10482.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 2002.

Filed July 23, 2002.

---

Petra M. Reinecke (argued) and Brian H. Getz, Law Offices of Brian H. Getz, San Francisco, CA, for the defendant-appellant.

W. Douglas Sprague (argued), Assistant U.S. Attorney, Sacramento, CA, for the plaintiff-appellee.

Before GOODWIN, HAWKINS and RAYMOND C. FISHER, Circuit Judges.

## OPINION

MICHAEL DALY HAWKINS, Circuit Judge.

### Introduction

Defendant–Appellant Antonio Hinostroza ("Hinostroza") appeals his conviction and sentence for possession of firearms by a person subject to a restraining order and for making false statements on a firearms application. He first alleges that his firearms-possession conviction violates the Second Amendment as an unreasonable regulation of his individual right to bear arms. He next claims that the district court abused its discretion by admitting evidence of uncharged allegedly false statements that he made. Finally, he contends that the district court clearly erred by enhancing his sentence based on a finding of obstruction of justice. For the reasons we set out below, we affirm the district court's judgment.

### Factual and Procedural Background

Hinostroza has lived in the United States for thirty-one years, twelve as a citizen. Throughout he has been legitimately employed and, up until this case, had no record of arrests or convictions. He maintains he was an avid hunter and outdoorsman, and had numerous firearms. Hinostroza was married to Lucia Hinostroza ("Lucia") until 1997, whereupon they separated and later went through acrimonious divorce proceedings. Alleging that Hinostroza's past violence to her put her in fear, Lucia obtained a restraining order against Hinostroza in August 1997. The order was granted but it made no specific findings regarding the truth of Lucia's allegations nor did it state that Hinostroza was a future threat to her. Nearly two years later, in August 1999, Hinostroza tried to persuade the court to dissolve the order so that he could own or possess a firearm in pursuit of his hunting and collecting activities. He failed. Nonetheless, he acquired firearms in September and October 1999, stating on his applications that he was not under a restraining order.[1]

Earlier in the year, on three separate occasions in the spring of 1999, Hinostroza had similarly stated on firearms applications that he was not the subject of a restraining order. Those statements are the basis for three of the five counts in the

---

1. Hinostroza was indicted in the Northern District of California for these two false statements on firearms applications but that indictment was dismissed after the conviction in this case.

district court proceedings. The two other counts are for possession of firearms while subject to a restraining order. Those counts stem from a search of Hinostroza's residence and truck on June 28, 2000.[2] The police found four firearms in the truck and four more in the house.

In an in limine motion, Hinostroza sought to exclude the two false statements from September and October of 1999. That motion was denied. At trial, Carmen Torres, Hinostroza's fiancee, appeared as a defense witness and testified that the weapons found in the truck and home were really hers. Torres explained that the day before the search, she had placed the firearms where the agents found them, unbeknownst to Hinostroza. She claimed she had placed them there because she was soon leaving to Mexico with her younger sons and did not want to leave the guns in her house while her older teenage son was there. Thus, according to her testimony, Hinostroza could not have known about the location of the guns, and therefore could not have knowingly possessed them.

The jury thought otherwise. At his sentencing hearing, Hinostroza testified that he possessed the firearms solely for hunting or collection, and therefore, he requested that his base offense level be reduced under the sentencing guidelines. The district court denied his request, and found Hinostroza's testimony at the sentencing hearing willfully false about a material matter, thus imposing on him an enhancement for obstructing justice. In total, he was sentenced to thirty-three months of imprisonment.

---

**2.** The truck, however, was registered to Hinostroza's fiancee, Carmen Torres.

**3.** While this Court has not previously considered the constitutionality of 18 U.S.C. § 922(g)(8) on Second Amendment grounds, it has heard and rejected challenges based on the Due Process Clause, the Commerce

## Analysis

### 1. *The Second Amendment*

■ This Court reviews constitutional challenges to statutes de novo. *United States v. Kaluna,* 192 F.3d 1188, 1193 (9th Cir.1999) (en banc). Hinostroza argues that this Court should reverse his conviction because it violates his individual rights under the Second Amendment by prohibiting him from possessing firearms without specific findings that he was a threat to his former wife, Lucia.[3] As support, he points to the recent Fifth Circuit conclusion in *United States v. Emerson,* 270 F.3d 203 (5th Cir.2001), that the Second Amendment protects an individual right to bear arms. Hinostroza's argument is foreclosed by our prior holding that the Second Amendment only confers upon states a collective right to bear arms. *See Hickman v. Block,* 81 F.3d 98, 101 (9th Cir. 1996); *see also Morton v. De Oliveira,* 984 F.2d 289, 292 (9th Cir.1993) ("[O]nly the court sitting en banc may overrule a prior decision of the court."). We therefore reject Hinostroza's Second Amendment challenge.

### 2. *Admission of Dismissed Alleged False Statements*

■ Hinostroza next contests the district court's admission of the two allegedly false statements on firearms applications from September and October 1999, arguing that it was error because the evidence was irrelevant and prejudicial. The statements were irrelevant, he claims, because they occurred *after* the false statements

---

Clause and the Tenth Amendment. *See United States v. Jones,* 231 F.3d 508, 513–15 (9th Cir.2000) (Due Process Clause, Commerce Clause and Tenth Amendment); *United States v. Rousseau,* 257 F.3d 925, 932 (9th Cir.2001) (Commerce Clause).

that are the basis of Counts Three, Four and Five in this case. Because these later statements were after the false statements at issue here, the later statements could not have affected the likelihood that the fact-finder would determine that the prior statements were false, that Hinostroza knew the statements to be false, or that the statements were intended to deceive. Instead, he argues, their admission was purely cumulative and prejudicial because it had "the prohibited effect of indicating to the jury that the defendant is a bad person, or that if he similarly filled out five applications, he must have known his statement to be false."

■■■ The defendant's argument that subsequent Rule 404(b) evidence is irrelevant, and therefore inadmissible, is unpersuasive. Hinostroza never really addresses the main contention of the government: that the later statements are probative of his intent and knowledge when he falsely answered the same question three times in the spring of 1999. The timing of these later statements does not make them less relevant. Moreover, our precedent has squarely resolved in the government's favor the issue that subsequent Rule 404(b) evidence may be relevant and admissible. *United States v. Bibo–Rodriguez*, 922 F.2d 1398, 1400 (9th Cir.1991) ("[W]e decline to follow [those] courts which have disallowed subsequent 'other act' evidence to prove knowledge. By its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts.") (citations omitted). The only time such evidence may be excluded by Rule 404 is if the evidence "tends to prove *only* criminal disposition." *United States v. Ayers*, 924 F.2d 1468, 1473 (9th Cir. 1991) (quoting *United States v. Sangrey*, 586 F.2d 1312, 1314 (9th Cir.1978)). With respect to the false statements counts, the subsequent acts show intent, perhaps a common plan to gather more firearms, and an absence of mistake or accident.[4] Furthermore, it is not only counterintuitive but also implausible to suggest, as Hinostroza does, that the very fact that the uncharged false statements are the same type of act as those charged should be their undoing for purposes of admissibility. It is precisely the similarity of subsequent Rule 404(b) acts that increases, not decreases, their probative nature and their relevance in showing knowledge, intent or modus operandi. The government's logic is compelling: that Hinostroza acquired firearms shortly after a judge denied his motion to dissolve the restraining order is probative of the defendant's knowledge that his earlier attempts were based on false statements as well.[5]

■■■ Moreover, the evidence of the uncharged false statements is admissible as direct evidence for the counts of unlawful firearms possession, as one of the guns seized in June 2000 was one of the guns he

---

4. We agree with the government that the subsequent acts here were not too remote in time from the crimes alleged in the indictment. In *United States v. Arambula–Ruiz*, 987 F.2d 599, 603–04 (9th Cir.1993), this Court noted that prior decisions held that "a conviction which occurred five years prior to the charge at issue was not too remote," and the facts of this case do not dictate a different result.

5. We typically consider the following factors in determining whether evidence of prior bad acts was properly admitted under Rule 404(b). The evidence must prove a material element of the offense for which the defendant is now charged; in certain cases, the conduct must be similar to the charged conduct; proof of the conduct must be based upon sufficient evidence; and the conduct must not be too remote in time. *United States v. Houser*, 929 F.2d 1369, 1373 (9th Cir.1990). Finally, in addition to these requirements, the evidence is subject to Rule 403. *Id.* We think the district court acted within its discretion in determining that the proffered testimony satisfied this multi-factor test and Rule 403.

applied for in September 1999. As the government correctly argues, evidence of the defendant's prior possession of the contraband is admissible for showing the defendant's knowledge that he possessed the contraband at the later date. *See Wright v. United States*, 192 F.2d 595, 597 (9th Cir.1951). While it is true the false statements of September 1999 do not prove Hinostroza's acquisition or possession of the weapon, they do suggest it strongly, rendering the evidence admissible.

In short, the district court did not abuse its discretion in admitting the evidence of the uncharged false statements. Any resulting prejudice was ameliorated by the limiting instruction given the jury, an instruction acceded to by the defense.

3. *The Obstruction of Justice Enhancement*

■■■ We review for clear error a district court's decision that a defendant obstructed justice. *United States v. Morgan*, 238 F.3d 1180, 1187 (9th Cir.2001). Once such a finding occurs, the Sentencing Guidelines (Section 3C1.1) require an enhancement of the penalty. *United States v. Dunnigan*, 507 U.S. 87, 98, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). The elements of an obstruction penalty for perjurious testimony require the court to find that the defendant gave false testimony on a material matter with willful intent. *United States v. Robinson*, 63 F.3d 889, 892 (9th Cir.1995).

The government mistakenly builds an argument around the theory that Hinostroza suborned Torres's "preposterous" testimony. The district court, though, did not ground its obstruction finding on that issue; rather, its decision was based on the defendant's testimony at the sentencing hearing. To that we turn.

■■■ Hinostroza begins by arguing that the government failed to prove and the district court failed to find that the false testimony was willful. The transcript of the evidentiary hearing, however, reveals the district court judge to have been "affront[ed]" by the testimony's patent falsity. Indeed, the court noted that defendant "got up here at the sentencing hearing and committed perjury himself." The court's finding of perjury a fortiori includes a finding of mens rea, so the defendant cannot plausibly argue that the record is devoid of any findings of mens rea here.

The real issue is materiality.[6] Hinostroza notes that the evidentiary hearing for the sentencing was limited to the issue of whether he should receive a downward departure under Section 2K2.1(b)(2) of the Sentencing Guidelines because the weapons were possessed solely for lawful sporting purposes or collection. Because of this limited purpose, he argues that the testimony that the court viewed as the basis for the obstruction could not have been material.

The government disputes this, contending that Hinostroza's testimony about his knowledge of the location of the guns was material to the length of his sentence. First, the government argues that asking Hinostroza about whether he admitted possessing the guns was germane to asking him what purpose they served. Second, the government claims that eliciting what seems like implausible testimony about how the guns got where they were is material to determining why the hunting/collection adjustment should not attach here: if that implausible testimony is

---

**6.** Material evidence or information means information that, if believed, would tend to influence or affect the issue under determination. U.S. Sentencing Guidelines Manual § 3C1.1 application note 6 (2001).

deemed false, then it is more likely that Hinostroza himself put the guns where they were found, and it becomes less plausible to believe that the guns, some of which were found within arm's reach of the bed, were possessed solely for hunting or collection purposes.

Hinostroza's testimony that he did not know how the loaded weapons got next to his bedside, on top of his television set, in his closet and in the truck he was driving was material to the sentencing determination. If the district court believed Hinostroza, it would have supported Hinostroza's contention that the weapons were possessed for hunting and collection purposes. If the court disbelieved Hinostroza, leading the court to conclude that Hinostroza purposefully kept the weapons in the locations they were discovered by law enforcement officers, then it was less likely that the weapons qualified for the sentence reduction. This is so because the location of weapons constitutes pertinent evidence of whether they are used solely for sporting and collection. *See* U.S.S.G. § 2K2.1(b)(2) application note 10 ("Under subsection (b)(2), 'lawful sporting purposes or collection' as determined by the surrounding circumstances, provides for a reduction to a offense level of 6. Relevant surrounding circumstances include ... the location and circumstances of possession and actual use[.]"); *see also United States v. Uzelac*, 921 F.2d 204, 206 (9th Cir.1990) ("The shotgun was kept fully loaded while it was on the display rack, a condition perhaps more consistent with use for personal protection than use as a hunting weapon."). If the court believed that Hinostroza did not know how the weapons got to the locations, it could have led the court to conclude that the weapons were kept for sporting and collection purposes.

Our holding has limits, as we recognize that there are times when a pre-sentence, post-jury verdict assertion will not be material to sentencing. Hinostroza in fact points us to *United States v. Gardiner*, 955 F.2d 1492, 1499 (11th Cir.1992) ("We conclude as a matter of law that the defendant's assertion cannot be material to sentencing if the assertion's truth requires the jury's verdict to be in error."). The rule announced in *Gardiner* does not negate the materiality of Hinostroza's false testimony at sentencing, however, because that testimony is not incompatible with the jury verdict. The jury could have convicted Hinostroza of possessing each of the weapons while simultaneously concluding that he did not place them in the locations in which they were found. *Gardiner*, therefore, does not affect our conclusion that Hinostroza's testimony was material.

## Conclusion

The district court's conviction and sentence of Hinostroza is **AFFIRMED.**