# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 02-3999

| | |
|---|---|
| United States of America, | % |
| | % |
| | % |
| Plaintiff - Appellee, | % |
| | % Appeal from the United States |
| v. | % District Court for the Western |
| | % District of Missouri. |
| James Leroy Gary, | % |
| | % |
| Defendant - Appellant. | % |

Submitted: June 10, 2003
Filed: September 9, 2003

Before MELLOY, HANSEN, and SMITH, Circuit Judges.

MELLOY, Circuit Judge.

On April 24, 2002, a jury convicted James L. Gary of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Gary to a term of incarceration of 105 months. On appeal, Gary asserts eight points of error. We affirm.

---

[1] The Honorable Dean Whipple, United States District Court Judge for the Western District of Missouri.

# I. BACKGROUND

On November 15, 2002, while executing a warrant for a suspected methamphetamine lab, police found a Lorcin .380 semiautomatic handgun in a dresser located in the spare bedroom of Gary's residence. Also in the dresser, police found ammunition and a cleaning kit. Police did not find any fingerprints on the gun or ammunition. They did lift a print from the cleaning kit and placed it on a fingerprint card. This print, however, turned out to be unusable because it lacked sufficient distinguishing marks.

At trial, the jury heard conflicting evidence regarding the gun. Police testified that, after arrest, Gary first stated that he bought the gun on the street but then quickly recanted and invoked his right to remain silent. Gary testified that he had no knowledge of the gun and that he actually told police that the gun must have come from the street. Gary's mother testified that, without Gary's knowledge, she obtained the gun from Darren Williams and put it in the dresser.[2] Michael Clemmons, one of Gary's former cellmates, testified that Gary admitted the gun was his, but that Gary stated his mother was going to claim it was her gun. Ultimately, the jury did not believe the testimony of Gary or his mother, and he was convicted of being a felon in possession of a firearm.

After the trial, Gary submitted an affidavit from Darren Williams in support of a claim that the police withheld exculpatory information garnered from Williams' two pretrial interviews. In the affidavit, Williams stated that he told police about seeing a gun in Gary's mother's possession fifteen months prior to the arrest. Gary presented this affidavit as newly discovered evidence in a motion for a new trial. The police refuted this claim by introducing a written summary from Williams' first

---

[2] Neither the prosecution nor the defense called Darren Williams to testify at trial.

interview and a transcript taken from an audiotape recording of his second interview. The district court found that neither document indicated that Williams ever discussed Gary's mother in connection with the possession of a gun. The district court denied the motion for a new trial.

At the sentencing hearing, the district court enhanced Gary's sentence on the basis that he obstructed justice by enlisting his mother and Williams to lie on his behalf. U.S.S.G. § 3C1.1. The district court also characterized Gary's prior felony conviction of escape from federal custody as a crime of violence, thereby increasing Gary's base offense level. U.S.S.G § 4B1.2. As a result, Gary was sentenced to a term of 105 months.

## II. DISCUSSION

Gary asserts eight points of error. These alleged errors can be broken down into five contested categories: Brady violations, jury instruction errors, constitutional error, sentencing errors, and an untimely motion to object.

## A. Brady Violations

In Points I and II, Gary challenges the district court's denial of his motion for a new trial based on alleged violations of Brady v. Maryland, 373 U.S. 83 (1963). In order to prove a Brady violation, Gary must show: "1) that the government suppressed evidence; 2) that the evidence was exculpatory; and 3) that the evidence was material either to guilt or punishment." United States v. Dittrich, 204 F.3d 819, 822 (8th Cir. 2000). We review the district court's "denial of a motion for a new trial based on a Brady claim for an abuse of discretion." United States v. Carman, 314 F.3d 321, 324 (8th Cir. 2002).

Point I challenges the government's alleged suppression of Williams' pretrial interviews. Williams, by affidavit, stated that these interviews placed the gun in the possession of Gary's mother fifteen months prior to the arrest. However, Williams' claims were refuted by the police and found perjurious by the district court. It is the responsibility "of the district court . . . to decide whether the newly discovered evidence is credible, and, if so, whether it would probably produce an acquittal if a new trial were held." United States v. Grey Bear, 116 F.3d 349, 350 (8th Cir. 1997) (internal citation omitted). Here, as will be discussed further in Point VI, the district court found Williams lacking in credibility – so much so that his involvement in the case significantly contributed to the district court's finding that Gary obstructed justice. Because Williams is not credible, his allegations are neither exculpatory nor material. Further, after thorough review of the Williams interviews, we agree with the district court that Williams' pretrial interviews did not implicate Gary's mother in any way. Thus, no Brady violation occurred and the district court did not abuse its discretion in denying the motion for a new trial on this basis.

In Point II, Gary alleges that the government violated Brady when it failed to disclose that a print was lifted from the cleaning kit and failed to provide the defense with the fingerprint card or any notes regarding that print. Prior to trial, Gary requested all the fingerprint evidence. The government did not turn over or disclose any information about a print on the cleaning kit. According to the government, the print was unusable because it lacked sufficient distinguishing marks. The police apparently discarded the fingerprint card and any notes of analysis because the negative results had no value to them. The government should have produced the card in response to Gary's request. Gary had a right to have independent expert analysis of the usability of the print. Failure to produce the card was error, but, for the reasons below, it was not an error that rises to the level required for a Brady violation.

-4-

In order to prove a <u>Brady</u> violation, Gary must not only show that evidence was improperly suppressed, but also that the evidence was material and exculpatory. <u>Dittrich</u>, 204 F.3d at 822. Exculpatory evidence is material evidence favorable to the accused. <u>United States v. Nelson</u>, 970 F.2d 439, 442 (1992). We have held that evidence is material under <u>Brady</u> "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>United States v. Ryan</u>, 153 F.3d 708, 711 (8th Cir. 1998) (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 434-35 (1995) (in turn quoting <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985))). Therefore, Gary must demonstrate a reasonable probability that, had the fingerprint card been disclosed to the defense, the jury would have acquitted on the possession charge.

In <u>United States v. Sumner</u>, 171 F.3d 636 (8th Cir. 1999), the defendant appealed his car theft conviction on <u>Brady</u> grounds. Sumner claimed that the government suppressed "material" evidence when it failed to inform him that a fingerprint found in the stolen car did not match his own prints. <u>Id.</u> at 637. We concluded, under the <u>Brady</u> material evidence standard, that no violation occurred because the prints would have had little impact on the overall record supporting the conviction. More specifically, we held that "there is no reasonable probability that the verdict would have been different had the results of the fingerprint analysis been made known to Sumner prior to trial." <u>Id.</u> As in <u>Sumner</u>, we believe that if the fingerprint analysis had been available to Gary, it would not have changed the jury's credibility determinations or the end result in this case.

In sum, Gary's argument is highly speculative and relies on substantial "ifs" and "coulds" that are unlikely to occur. Gary claims that *if* the print was usable and *if* it matched someone other than Gary, then the fingerprint card *could* have been critical to the defense. These speculations do not satisfy the reasonable probability requirement that is necessary for the evidence to be material under <u>Brady</u>. "[M]ateriality is not established by the mere possibility that the withheld evidence

may have influenced the jury. 'Rather, there must be a reasonable probability that its disclosure would have led to a different result at trial, thus undermining confidence in the jury verdict.'" United States v. Jones, 160 F.3d 473, 479 (8th Cir. 1998) (quoting Knox v. Iowa, 131 F.3d 1278, 1283 (8th Cir. 1997)). If the fingerprint card had been disclosed to Gary prior to trial, there is no reasonable probability that Gary would have been able to reveal a positive identification, nor that any evidence revealed would have changed the jury's verdict.

"In short, unusable or unreadable prints, which might have been [the defendant's, are] not exculpatory material." Taylor v. Maggio, 581 F. Supp. 359, 366 (E.D. La. 1984), aff'd, 727 F.2d 341 (5th Cir. 1984) (affirming the district court's denial of a certificate of probable cause). Because Gary cannot show that the withheld evidence was material or exculpatory, his Brady claim fails.

## B. Jury Instruction Errors

Points III and IV of Gary's appeal allege jury instruction errors by the district court. We review a district court's denial or acceptance of a party's proposed jury instruction under an abuse of discretion standard. United States v. Whitehead, 176 F.3d 1030, 1037 (8th Cir. 1999) (citing United States v. Tucker, 137 F.3d 1016, 1036 (8th Cir. 1998)). Gary is entitled to a proposed instruction "that conveys the substance of his request if his request is timely, it is supported by the evidence in the case, and is a correct statement of the law." Id. However, this entitlement does not guarantee a particular formulation of the proposed instruction. Id. Reversal of a conviction, based upon an instructional error, is only warranted if the error causes prejudice. Id.

In Point III, Gary claims the district court erred in refusing his proposed instruction defining "knowingly." Instruction 19 informed the jury that conviction required proof of "knowing" possession of a firearm. Instruction 20 stated that

possession could be either actual or constructive, and explained that "[a] person who . . . has both power and the intention . . . to exercise dominion or control over a thing . . . is then in constructive possession of it." Neither Instruction 19 or 20 defined the term "knowing." Gary's claim is without merit. We have held that the term "knowingly" is within the understanding of the lay juror. United States v. Johnson, 892 F.2d 707, 710 (8th Cir. 1989). Moreover, Instruction 20 correctly stated the law in this circuit. See Carman, 314 F.3d at 325 (holding that "constructive possession is sufficient for conviction under § 922(g)(1)"). To show constructive possession, the government had to prove both the power and intent to exercise dominion or control over the gun. This can be established "by a showing that the firearm was seized at the defendant's residence." United States v. Boykin, 986 F.2d 270, 274 (8th Cir. 1993)). Because the gun was seized at Gary's home, the jury could have found that Gary constructively possessed the gun. The instructions as given correctly set out the law and the district court properly refused Gary's proposed instruction on this issue.

In Point IV, Gary contends that the district court erred by refusing to submit his proposed instruction regarding the potential unreliability of statements that are not videotaped, audiotaped, transcribed or attested-to by Gary. The requested instruction warned the jury not to give any special weight to reports simply because they were made by the police. We find no error because the district court submitted a credibility instruction which adequately addressed the subject matter of Gary's proposed instruction. Instruction 15 specifically addressed statements to the government: "In deciding what weight to give the defendant's statements, you should first examine whether each statement was made. I instruct you that you are to give the statements such weight as you feel they deserve in light of all the evidence." Appellant's Separate App. at 117. This is a fair and adequate instruction regarding statements to the government; further warning is unnecessary.

## C. Constitutional Error

In Point V, Gary argues that three Supreme Court decisions require this court to find 18 U.S.C. § 922(g)(1) unconstitutional: Jones v. United States, 529 U.S. 848 (2000) (involving the Organized Crime Control Act, 18 U.S.C. § 844(i)), United States v. Lopez, 514 U.S. 549 (1995) (involving the Gun-Free School Zones Act, 18 U.S.C. § 922(q)(1)(A)), and United States v. Morrison, 529 U.S. 598 (2000) (involving the Violence Against Women Act, 42 U.S.C. § 13981). Each of these cases struck down statutes as unconstitutional exercises of the Commerce Clause because the statutes were not directed at interstate commerce. "'We review federal constitutional questions de novo.'" United States v. Bates, 77 F.3d 1101, 1104 (8th Cir. 1996) (quoting United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995)).

We have repeatedly rejected constitutional challenges to § 922(g)(1). Recently, we upheld the constitutionality of § 922(g)(1) against a Commerce Clause challenge. United States v. Shepherd, 284 F.3d 965, 969 (8th Cir. 2002). Accordingly, Gary's constitutional claim fails. United States v. Prior, 107 F.3d 654, 660 (8th Cir. 1997) (stating that one panel cannot overrule another).

## D. Sentencing Errors

Point VI of Gary's appeal claims the district court abused its discretion in enhancing his offense level by two levels on the basis that he obstructed justice. We review the district court's factual findings regarding obstruction of justice for clear error. United States v. Calderon-Avila, 322 F.3d 505, 507 (8th Cir. 2003). The United States Sentencing Guidelines § 3C1.1 states that a defendant's offense level may be increased by two levels if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense[.]" The district court determined, based on the testimony of the police and Clemmons, that Gary lied about

his knowledge of the gun, enlisted his mother to present false testimony, and had Williams produce a perjurious affidavit. "[A] district court's findings as to the credibility of a witness are 'virtually unreviewable on appeal.'" United States v. Adipietro, 983 F.2d 1468, 1479 (8th Cir. 1993) (quoting United States v. Candie, 974 F.2d 61, 64 (8th Cir. 1992)). The record supports the district court's findings and credibility determinations; accordingly, we affirm the district court's sentence enhancement.

In Point VII, Gary contends that there was no factual basis for the district court to characterize his prior conviction – an unarmed "walkaway" escape from federal custody – as a crime of violence, and thus increase his base offense level. The sentencing guidelines, however, "direct us to examine the nature of the expressly charged conduct, rather than the particulars of the defendant's behavior, to determine whether a particular offense is a crime of violence." United States v. Nation, 243 F.3d 467, 472 (8th Cir. 2001) (citing U.S.S.G. §4B1.2, cmt. n.1.). Under this approach, we have categorically defined an escape as a crime of violence because, by its nature, an escape involves a potential risk of physical injury to others. Id. This includes "walkaway" escapes even though there is no use or threat of force or violence. United States v. Sun Bear, 307 F.3d 747, 752 (8th Cir. 2002) (citing Nation, 243 F.3d at 472); United States v. Abernathy, 227 F.3d 1048, 1051 (8th Cir. 2002). Consequently, we affirm the increase of Gary's offense level based on the characterization of his prior conviction as a crime of violence.

## E. Untimely Motion to Object

Finally, Gary alleges that the district court abused its discretion by denying his motion to object to the magistrate judge's report and recommendation out of time. See Fed. R. Crim. P. 45(b) (standard of review: "the court on its own *may* extend the time") (emphasis added). Rule 45(b) provides that a court "may" extend a time period "if the party failed to act because of excusable neglect." The magistrate judge

filed the report and recommendation on March 7, 2002. Once filed, Gary had ten days to file objections to the report and recommendation. <u>United States v. Looking</u>,156 F.3d 803, 809 n.7 (8th Cir. 1998) (citing 28 U.S.C. § 636(b)(1)(C)). Gary did not object within this ten day window. Further, it is undisputed that on April 2, 2002, during a pretrial conference, Gary represented that he would not seek review of, or object to, the report and recommendation. As a result, on April 3, 2002, well beyond the standard ten days required by 28 U.S.C. § 636(b)(1)(C), the district court adopted the report and recommendation and denied the motion to suppress evidence. In light of these events, the district court did not abuse its discretion by denying Gary's motion to object out of time.

## III. CONCLUSION

After thorough review, and for the foregoing reasons, we affirm Gary's conviction and sentence.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.