**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry Duane SIOUX, Defendant–
Appellant.**

**No. 03–30310.**

United States Court of Appeals,
Ninth Circuit.

Submitted March 4, 2004.*

Filed April 5, 2004.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Jeffrey G. Michael, Esq., and Gary E. Wilcox, Esq., Billings, MT, for the appellant.

William W. Mercer, United States Attorney, and Marcia Hurd, Assistant United States Attorney, Billings, MT, for the respondent.

Before: O'SCANNLAIN, RYMER, and JAY S. BYBEE, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether Federal Rule of Evidence 413 permits the admission of propensity evidence detailing sexual misconduct that occurred subsequent to the event giving rise to a pending trial.

I

On or about February 2, 2001, H.H. and several of her underage friends were drinking at an abandoned house on the Northern Cheyenne Indian Reservation in Lame Deer, Montana. In the wee hours of the morning, somebody at the party said that he thought he heard the police coming. As the party-goers scattered, H.H. hid in a dark bedroom in the back of the house and soon passed out.

H.H. eventually awoke to find herself naked, with Larry Sioux holding her down and having sexual intercourse with her. Through tears, she told Sioux to stop and attempted to push him away, but he held his hand over her mouth and continued to rape her. Finally, somebody came into the room and pulled Sioux off of H.H. A

few days later, H.H. told her school counselor that she had been raped at the party. The counselor made a formal report to her assistant principal, who in turn contacted tribal services to commence a full investigation.

On January 17, 2002, a federal grand jury handed down a single count indictment charging Sioux with sexual abuse in violation of 18 U.S.C. § 2242(2).[1] He was arrested on May 28, 2002 and pled not guilty at his preliminary appearance the following day. On October 16, 2002, Sioux requested Rule 404(b) notice[2] from the government. On October 29, 2002, the government responded by indicating that it planned to introduce testimonial evidence regarding a similar sexual assault committed by Sioux against one J.R.S. in May, 2001—approximately three months after he had assaulted H.H.

On January 22, 2003, virtually upon the eve of trial, Sioux filed a motion in limine seeking to exclude evidence of that assault on grounds that it did not qualify for admission under Rule 404(b) or the multifactor test governing similar Rule 413 evidence set forth in *United States v. LeMay*, 260 F.3d 1018, 1027–28 (9th Cir.2001), and that its admission would violate his federal due process rights. However, Sioux never alleged that the admission of such evidence was improper because it involved another act of sexual misconduct that had occurred *subsequent* to that for which he was to stand trial. The government tersely responded on January 24, suggesting that Sioux's motion was untimely and, in any event, that the admission of the evidence was proper.

As trial opened on January 27, 2003, United States District Judge Richard F. Cebull indicated that he would reserve ruling on Sioux's motion until all of the government's evidence—except for J.R.S.'s testimony—had been received. Following the presentation of that evidence on January 27 and January 28, the government made an offer of proof regarding the content of J.R.S.'s testimony. Afterwards, Judge Cebull asked the government's attorney whether the subsequent nature of Sioux's alleged assault against J.R.S. was relevant to his determination. She replied that it was not. The court then heard argument on the motion from Sioux. Counsel never raised the issue of the event's timing in relation to the charged conduct, and Judge Cebull did not make any further inquiries concerning that issue. At the conclusion of the parties' exchange, Judge Cebull engaged in a conscientious evaluation of the *LeMay* factors and ultimately allowed J.R.S. to testify.[3]

On January 28, 2003, the jury convicted Sioux of sexual abuse. Judge Cebull even-

---

**1.** In relevant part, § 2242 provides:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison knowingly ...
> (2) engages in a sexual act with another person if that other person is—
> (A) incapable of appraising the nature of the conduct; or
> (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;
> or attempts to do so, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 2242(2).

**2.** Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that *upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial.*" Fed.R.Evid. 404(b) (emphasis added).

**3.** Sioux does not allege that Cebull erred in conducting the *LeMay* balancing.

tually sentenced Sioux to 97 months' imprisonment, to be followed by 3 years of supervised release. Sioux timely appealed.

## II

■ Prior to 1994, the admission of propensity evidence in sexual misconduct cases was severely restricted by Federal Rule of Evidence 404(b), which generally forbids the introduction of such evidence "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404. After years of turning back efforts to relax this long-standing bar, Congress passed Rules 413, 414, and 415 as part of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 320935, 108 Stat. 1796, 2135–38. Together, these three rules "supersede[ ] Rule 404(b)'s restriction," *United States v. Guardia*, 135 F.3d 1326, 1329 (10th Cir.1998), by establishing a presumption—but not "a blank check"—favoring the admission of propensity evidence at both civil and criminal trials in-

volving charges of sexual misconduct. *Le-May*, 260 F.3d at 1022; *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998); *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir.1997); *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir.1997); *United States v. Sumner*, 119 F.3d 658, 661–62 (8th Cir.1997); *United States v. Larson*, 112 F.3d 600, 604–05 (2d Cir.1997). For its part, Rule 413 in relevant part provides:

> In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of *another* offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.

Fed.R.Evid. 413(a) (emphasis added).[4]

■ Sioux now contends that the admission of J.R.S.'s testimony alleging that he sexually assaulted her in May 2001 violated Rule 413 because the sexual misconduct about which J.R.S. testified took place *after* the crime for which Sioux stood trial—the February 2, 2001 sexual assault of H.H.[5] In so arguing, Sioux has raised an

---

4. Similarly, Rule 414(a) provides: "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant." Rule 415(a) then renders the evidentiary standards established by Rules 413 and 414 operative in civil cases: "In a civil case in which a claim for damages or other relief is predicated on a party's alleged commission of conduct constituting an offense of sexual assault or child molestation, evidence of that party's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered as provided in Rule 413 and Rule 414 of these rules."
   Due to the striking similarities between these rules and the fact that they are *in pari materia*, we have followed decisions interpreting each of these rules individually in cases interpreting their companions. *See, e.g., LeMay*, 260 F.3d at 1027–30; *Doe by & through*

*Rudy–Glanzer v. Glanzer*, 232 F.3d 1258, 1267–69 (9th Cir.2000).

5. Although we generally review evidentiary determinations involving an application of the Federal Rules of Evidence for abuse of discretion, we review de novo the district court's interpretation of those rules. *United States v. Angwin*, 271 F.3d 786, 798 (9th Cir.2001); *United States v. Mateo–Mendez*, 215 F.3d 1039, 1042 (9th Cir.2000). Because Sioux did not raise the specific objection he now presses while moving at trial to suppress the admission of J.R.S.'s testimony, the district court's decision to admit that evidence is subject only to plain error review. *See, e.g., United States v. Gomez–Norena*, 908 F.2d 497, 500 (9th Cir.1990) ("[A] party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, ... but also by making the wrong specific objection ....") (citations omitted). To merit reversal in these circumstances, "There must be an 'error' that is 'plain' and that 'affect[s] sub-

issue of first impression not only within the Ninth Circuit but, as best we can tell, nationwide.

### A

■ We begin, as we must, with the text of the rule itself. For, where a "statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (*quoting Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)); *see also Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."). In turn, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (*citing Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 477, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992); *McCarthy v. Bronson,* 500 U.S. 136, 139, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991)).

■ We find the language of Rule 413 unmistakably pellucid. It sanctions the admission of "evidence of the defendant's commission of *another* offense . . . of sexual assault." Fed.R.Evid. 413(a) (emphasis added). Used as it is here, the word "another" refers to "an additional one of the same kind: one more" or to "one of a set or group of unspecified or indefinite

things" that has not already been contemplated. *Webster's Third New Int'l Dictionary of the English Language, Unabridged* 89 (1971). Sioux's alleged sexual assault of J.R.S. is plainly "of a kind" with his assault of H.H.; it is beyond serious dispute that such misconduct is part of the same "set or group" of acts declared relevant by Congress and made admissible on that basis.

Sioux's challenge hinges on assigning a temporal limitation to the word "another"—in particular, *precedence.* Yet, "another" contains no inherent chronological limitation, and to the extent the word is used in a necessarily temporal context, its most natural usage actually signifies *subsequence.* As the Oxford English Dictionary explains:

> *Another* is distinguished from *the other,* in that, while the latter points to the remaining determinate member of a known series of two or more, *another* refers indefinitely to *any* further member of a series of indeterminate extent. [In this sense, it means:] One more, one further; originally *a second* of two things; subsequently extended to anything additional or remaining beyond those already considered; an additional.

1 *Oxford English Dictionary* 495 (2d ed.1989) (all emphases in original). Thus, while we in no way mean to suggest that Rule 413 applies *only* to subsequent acts, we have little doubt that the plain language of the rule permits admission of subsequent acts evidence to the same extent it permits the introduction of evidence tending to demonstrate prior acts of sexual misconduct.

---

stantial rights.' " *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Even then, "the decision to correct the forfeited error [rests] within the sound discretion of the court of appeals, and the court should not exercise that discretion

unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* (*quoting United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

## B

This understanding of Rule 413's plain language finds further support in the prevailing interpretation of the exceptions to Rule 404(b). As it happens, Rule 404(b) uses language that is nearly identical to that of Rule 413 and its companions. It provides that although "[e]vidence of *other* crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith [such evidence may] be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed.R.Evid. 404(b) (emphasis added). Of course, the only difference between Rule 404(b)'s use of "other" and Rule 413's use of "another" is number: The former precedes the plural "crimes, wrongs, or acts," while the latter precedes the (at least initially) singular "offense or offenses."

■■ In spite of the fact that the "other crimes, wrongs, or acts" referred to in Rule 404(b) are "customarily referred to ... as 'priors,'" Edward J. Imwinkelried, *Uncharged Misconduct Evidence* 2:12 at 2–75 (2003), the federal courts overwhelmingly have embraced what Professor Imwinkelried identifies as "the soundest view," *id.* at 2–78: namely, that the existing exceptions to Rule 404(b)'s general bar against the admission of propensity evidence allow for the introduction of *both* prior *and* subsequent bad acts evidence. *See, e.g., United States v. Hinostroza,* 297 F.3d 924, 928 (9th Cir.2002) ("[O]ur precedent has squarely resolved in the government's favor the issue that subsequent Rule 404(b) evidence may be relevant and admissible.") (*citing United States v. Bibo–Rodriguez,* 922 F.2d 1398, 1400 (9th Cir.1991)) ("By its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts."); *see also, e.g., United States v. Mohr,* 318 F.3d 613, 617 (4th Cir.2003);

*United States v. Anifowoshe,* 307 F.3d 643, 646–47 (7th Cir.2002); *United States v. Germosen,* 139 F.3d 120, 128 (2d Cir.1998); *United States v. Jones,* 145 F.3d 959, 964 (8th Cir.1998); *United States v. Latney,* 108 F.3d 1446, 1449 (D.C.Cir.1997); *United States v. Delgado,* 56 F.3d 1357, 1364–65 (11th Cir.1995); *United States v. Osum,* 943 F.2d 1394, 1404 n. 7 (5th Cir.1991). It is an elementary principle of statutory construction that similar language in similar statutes should be interpreted similarly, *see, e.g., Northcross v. Bd. of Educ. of Memphis City Schools,* 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973), and we see no reason to depart from that course here—where, by carving out an exception to the general bar against the introduction of propensity evidence, Rules 413, 414, and 415 perform the same function as Rule 404(b)'s own dispensations.

## C

■ In the absence of any support for his proposed interpretation in the language, usage, or context of the rule, Sioux contends that "Rule 413 itself is silent on the question whether the Act applies to subsequent as well as prior acts," and thus urges the court to turn to the legislative history of Rules 413, 414, and 415 "to determine the intent of Congress." However, it is well-settled that "reference to legislative history is inappropriate when the text of the statute is unambiguous." *HUD v. Rucker,* 535 U.S. 125, 132, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002); *see also W. Va. Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98–99, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) ("The best evidence of [legislative] purpose is the statutory text adopted by both Houses of Congress and submitted to the President. Where that contains a phrase that is unambiguous— that has a clearly accepted meaning in both legislative and judicial practice—we do not permit it to be expanded or con-

tracted by the statements of individual legislators or committees during the course of the enactment process."); *R.R. Comm'n of Wisconsin v. Chicago, Burlington, and Quincy R.R. Co.*, 257 U.S. 563, 589, 42 S.Ct. 232, 66 L.Ed. 371 (1922) ("Committee reports and explanatory statements of members in charge made in presenting a bill for passage ... are only admissible to solve doubt and not to create it."); *In re Sinclair*, 870 F.2d 1340, 1344 (7th Cir. 1989) ("It would demean the constitutionally prescribed method of legislating to suppose that its elaborate apparatus for deliberation on, amending, and approving a text is just a way to create some *evidence* about the law, while the *real* source of legal rules is the mental processes of legislators.") (emphasis in original). We therefore decline Sioux's invitation to troll Rule 413's legislative history in search of statements that might—or might not [6]—contradict the plain language of the provision.

### III

■ Because Rule 413 unambiguously allows for the admission of subsequent acts evidence, there was no error in Judge Cebull's evidentiary determination. The judgment of the district court is hereby

AFFIRMED.

**6.** As our colleague Judge Kozinski has observed, "legislative history can be cited to support almost any proposition, and"—as in this case—"frequently is." *Wallace v. Christensen*, 802 F.2d 1539, 1559 (9th Cir.1986) (Kozinski, J., concurring).