# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3275

_____

United States of America,          *
          *
      Plaintiff - Appellee,    *
          *   Appeal from the United States
    v.          *   District Court for the
          *   District of North Dakota.
Robert F. Lippman,          *
          *
      Defendant - Appellant.  *

_____

Submitted: March 11, 2004

Filed: May 27, 2004

_____

Before MURPHY, SMITH, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Robert F. Lippman was convicted by a jury of possession of a firearm by an individual subject to a domestic violence restraining order, in violation of 18 U.S.C. § 922(g)(8). After granting a downward departure, the district court[1] sentenced Lippman to eight months imprisonment. On his appeal, Lippman argues that the district court should have given two jury instructions he requested and that § 922(g)(8) is unconstitutional. We affirm.

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

Lippman and Edward Johannesen attempted to drive into Canada from Portal, North Dakota shortly after midnight on May 3, 2002, but they were denied entry. United States customs agents suspected that the two were drunk or under the influence of some other substance, and they conducted a routine customs inspection. They discovered two loaded firearms in Johannesen's van. A 9mm KELTEC pistol was found under the front passenger seat where Lippman was sitting, and a .410 gauge revolver was discovered in a green duffle bag behind that seat. Johannesen told the agents that the firearms were his and later produced receipts showing that he had purchased them. Lippman admitted that he owned the green duffle bag.

After the firearms were discovered, customs officials contacted the Burke County Sheriff's Department, which did a background check on the two men. It revealed a domestic violence restraining order entered against Lippman on February 3, 2000 in California and a misdemeanor arrest warrant for his arrest. Lippman and Johannesen were arrested for carrying loaded firearms in a vehicle and transported to the Mountrail County jail. Lippman was released from jail the next day after pleading guilty to a state charge of possession of a loaded .410 gauge Thunder Fire revolver in a motor vehicle.

Agents from the federal Bureau of Alcohol, Tobacco, and Firearms interviewed Lippman and Johannesen on August 6, 2002, after learning that Lippman had been convicted of possessing a firearm while he was subject to a domestic violence restraining order. Lippman told the agents that the green bag was his and that he had known Johannesen's firearms were in the vehicle. When asked about the restraining order, Lippman admitted that he was aware of it but that he did not think it prohibited him from possessing a firearm.

The restraining order against Lippman was the result of an application and declaration his former girlfriend had filed on January 13, 2000. Lippman was served with notice of the application and appeared with the applicant before a California

2

state judge on February 3, 2000. The court was prepared to hear evidence at that time, but Lippman agreed to stipulate to entry of a restraining order even though he said he disagreed with the factual allegations in the application. The judge took note of his statement and issued the restraining order based on Lippman's stipulation. Lippman says that the judge did not inform him that possessing firearms while subject to the restraining order would violate federal law, but he admits that he was given a copy of the order and that it included notice of the firearms restriction.[2] Since the expiration date of the restraining order was February 2, 2003, it still was in effect on May 3, 2002 when the guns were found under Lippman's seat and in his duffle bag.

On September 13, 2002 Lippman was indicted for possession of firearms by a person subject to a domestic violence restraining order, in violation of 18 U.S.C. § 922(g)(8). A jury returned a guilty verdict, and the district court sentenced him to eight months imprisonment after finding his case to be outside the heartland of such offenses and granting a downward departure under United States Sentencing Guidelines § 5K2.0. Lippman appeals, arguing that his conviction should be overturned because the court failed to give two jury instructions he proposed and because the statute under which he was convicted is unconstitutional.

---

[2]The restraining order stated,

> NOTICE REGARDING FIREARMS
> Any person subject to a restraining order is prohibited from purchasing or attempting to purchase, receiving or attempting to receive, or otherwise obtaining a firearm. Such conduct is subject to a $1,000 fine and imprisonment. Under federal law, the issuance of a restraining order after hearing will generally prohibit the restrained person from owning, accepting, transporting, or possessing firearms or ammunition. A violation of this prohibition is a separate federal crime.

Section 922(g)(8) states that it is unlawful for a person to possess a firearm when that individual is subject to a domestic violence restraining order "issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate."

Lippman requested that the district court instruct the jury that the hearing required under 18 U.S.C. § 922(g)(8) is a proceeding in which witnesses testify and evidence is received.[3] The court's instruction defined hearing in this way:

> The term "hearing" means an actual judicial proceeding, usually open to the public, held for the purpose of deciding issues of fact or law, sometimes with witnesses testifying, during which the parties had notice and opportunity to participate.

Lippman contends that the jury instruction should have required that evidence actually have been presented at the hearing. We review the denial of a requested jury instruction for abuse of discretion. United States v. Gary, 341 F.3d 829, 834 (8th Cir. 2003).

The statute states what is required for a hearing under § 922(g)(8). A hearing requires actual notice and an opportunity to be heard, but the statute does not require that evidence actually have been offered or witnesses called. As the Seventh Circuit explained in United States v. Wilson, 159 F.3d 280, 291-92 (7th Cir. 1998), "hearing" and "opportunity to participate" are not arcane legal terms incomprehensible to the

_____

[3]Lippman's proposed jury instruction read:

> The term "hearing" means a proceeding of relative formality, generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and evidence presented.

4

general public, and no further definition is needed for the jury. We agree. The district court did not abuse its discretion by its instruction or by refusing to give the one proposed by Lippman.

Lippman relies on a Fifth Circuit decision, United States v. Spruill, 292 F.3d 207 (5th Cir. 2002), to support his argument that § 922(g)(8) requires that an evidentiary hearing have actually been held. The restraining order in Spruill had not been issued after a hearing of which the respondent had received actual notice as required by § 922(g)(8), and the court did not rule that an evidentiary hearing must have been held. See id. at 208. The defendant there had never received notice of a hearing, never appeared before a judge, and never had any opportunity to participate because a hearing was not scheduled or convened. Id. at 216-17. Here, Lippman received notice of the hearing and appeared before a judge who was prepared to hear evidence. More on point is another Fifth Circuit case which held that a hearing had been held even though no witnesses had been called and no evidence had been presented, but the defendant had had the opportunity to put on evidence. United States v. Banks, 339 F.3d 267, 271 (5th Cir. 2003).

Lippman's other complaint about the jury instructions is that the district court should have given his proposed instruction that the United States had to prove that he knew both that he possessed a firearm and that such possession was prohibited by his restraining order.[4] He contends that the penalty section of the statute, § 924(a)(2), requires that the defendant have knowingly violated § 922(g)(8).

We have already held in United States v. Hutzell, 217 F.3d 966, 968 (8th Cir. 2000), that the penalty provisions in § 924(a)(2) do not "'require knowledge of the law nor an intent to violate it'" for a defendant to be convicted under § 922(g). The defendant in Hutzell was convicted under § 922(g)(9) for possessing a firearm after

---

[4]The district court's instruction stated that the jury could convict Lippman if it found that he knew he possessed a gun.

having been convicted of a domestic violence offense, and that conviction, just like Lippman's offense under § 922(g)(8), was subject to the penalty provisions in § 924(a)(2). We see no reason why the reasoning of Hutzell should not apply here, and Lippman does not cite any case which has applied the knowledge requirement that he urges. Every circuit court that has addressed the application of § 924(a)(2) to § 922(g)(8) has rejected such a requirement, see, e.g., United States v. Kafka, 222 F.3d 1129, 1131 (9th Cir. 2000); United States v. Wilson, 159 F.3d 280, 289 (7th Cir. 1998).[5] We conclude that the district court did not abuse its discretion by not giving Lippman's proposed jury instruction.

Finally, Lippman argues that his conviction should be reversed because § 922(g)(8) is unconstitutional. The district court denied Lippman's constitutional claim in a pretrial order and again in its order denying his motion for stay of sentence and release pending appeal. The district court held that the Second Amendment does not protect an individual right to bear arms, but that even if it did, Lippman had not shown that he would succeed with his constitutional argument. To succeed, the court said, he would have had to show that the statutory restriction of his right was not narrowly tailored or unreasonable in scope, citing United States v. Emerson, 270 F.3d 203, 261 (5th Cir. 2001). Lippman contends that the Second Amendment protects his individual right to bear arms and that the district court erred in its conclusion that § 922(g)(8) does not impermissibly infringe on that right. Our standard of review here is de novo. United States v. Koons, 300 F.3d 985, 990 (8th Cir. 2002).

Lippman contends that this circuit recognized in Hutzell, 217 F.3d at 969, that the Second Amendment protects an individual right to bear arms, and that the district court should have applied a strict scrutiny standard which he says the Fifth Circuit

---

[5]Several other circuit courts have rejected a similar argument based on due process grounds. See, e.g., Kafka, 222 F.3d at 1131; Wilson, 159 F.3d at 289; United States v. Reddick, 203 F.3d 767, 770 (10th Cir. 2000); United States v. Baker, 197 F.3d 211, 219-20 (6th Cir. 1999).

used in Emerson. He also argues that § 922(g)(8) is not narrowly tailored as applied to him because he has not been found to pose a real threat or danger to others.

The United States counters that § 922(g)(8) is constitutional and that exactly how the Second Amendment right is defined is less important than whether § 922(g)(8) is an appropriate limitation on it. Citing Emerson, the government argues that § 922(g)(8) is an appropriate limitation because reducing domestic violence is a compelling government interest and the restraining order against Lippman was tailored to fit that interest because it was limited in duration, included a no contact provision, and specifically identified the person to be protected.

In a line of cases starting with United States v. Synnes, 438 F.2d 764, 772 (8th Cir. 1971), we have held that the Second Amendment protects the right to bear arms when it is reasonably related to the maintenance of a well regulated militia. See, e.g., United States v. Wilson, 315 F.3d 972, 973-74 (8th Cir. 2003); United States v. Lewis, 236 F.3d 948, 950 (8th Cir. 2001); United States v. Smith, 171 F.3d 617, 624 (8th Cir. 1999); United States v. Farrell, 69 F.3d 891, 894 (8th Cir. 1995); United States v. Hale, 978 F.2d 1016, 1020 (8th Cir. 1992); United States v. Nelson, 859 F.2d 1318, 1320 (8th Cir. 1988); Cody v. United States, 460 F.2d 34, 37 (8th Cir. 1972). Hutzell is no exception because it cited United States v. Miller, 307 U.S. 174, 178-79 (1939), in connection with the right to bear arms, and the Supreme Court held in Miller that the Second Amendment protects the right to bear arms in "some reasonable relationship to the preservation or efficiency of a well-regulated militia." Id. Nor could a panel of the court overrule our line of cases. See, e.g., Wilson, 315 F.3d at 973-74 (only the court en banc can overrule circuit precedent). Since Lippman has not shown that his firearm possession was reasonably related to a well regulated militia, his Second Amendment argument cannot succeed.

Even if the circuit had ruled that the Second Amendment protects a freestanding individual right to bear arms, Lippman would not prevail with his

argument that § 922(g)(8) is unconstitutional as applied to him. He argues that we should follow the Fifth Circuit in Emerson and apply a strict scrutiny analysis, but the court's inquiry there actually focused on whether the alleged infringement under § 922(g)(8) was narrowly tailored and reasonable. See 270 F.3d at 261. The court concluded that the statute is constitutional even though it does not require an express finding that the defendant posed a threat to others at the time the domestic violence restraining order was entered. Id. at 264-65. We agree with that conclusion. We also conclude that the restraining order issued against Lippman was narrowly tailored to restrict his firearm possession for a limited duration and to protect the individual applicant and that Congress had a compelling government interest in enacting § 922(g)(8) to decrease domestic violence.

Other case law is also not favorable to Lippman's argument. No circuit court which has addressed the question has found § 922(g)(8) unconstitutional under the Second Amendment. See, e.g., United States v. Bayles, 310 F.3d 1302, 1307 (10th Cir. 2002) (holding that the Second Amendment protects the right to possess firearms only if reasonably related to a well regulated militia); United States v. Hinestroza, 297 F.3d 924, 927 (9th Cir. 2002) (holding that the Second Amendment does not guarantee an individual right to bear arms); United States v. Napier, 233 F.3d 394, 402-03 (6th Cir. 2000) (same); Emerson, 270 F.3d at 264-65. Further, it is well established that Congress did not violate the Second Amendment in enacting 18 U.S.C. § 922(g). See, e.g., Wilson, 315 F.3d at 973; United States v. Waller, 218 F.3d 856, 856 (8th Cir. 2000) (per curiam).

For these reasons, we affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the opinion of the court insofar as it rejects Lippman's challenges to the district court's jury instructions, and I concur in the judgment affirming the

district court. I do not join all of the court's discussion concerning the Second Amendment, because I would resolve Lippman's constitutional claim on narrower grounds.

Both parties in this case agree that the Second Amendment protects the right of an individual to bear arms. Lippman observes that a recent panel of this court, citing the Supreme Court's decision in *United States v. Miller*, 307 U.S. 174, 178-79 (1939), said that "an individual's right to bear arms is constitutionally protected." *United States v. Hutzell*, 217 F.3d 966, 969 (8th Cir. 2000). Lippman argues, therefore, that "the right protected in the Second Amendment is an individual one, not a 'collective' one," and that it is "enjoyed by individuals, as opposed to states." (Brief of Appellant at 22, 26). As explained recently by the Solicitor General, the United States also interprets *Miller* and the Constitution's text and history to mean that "the Second Amendment protects the rights of individuals, including persons who are not members of any militia or engaged in military service or training, to possess and bear their own firearm, subject to reasonable restrictions designed to prevent possession by unfit persons or to restrict the possession of types of firearms that are particularly suited to criminal use." (App. 335, Brief for the United States in Opposition to Petition for Writ of Certiorari, *Emerson v. United States*, No. 01-8780 (U.S.), filed May 2002). Accordingly, the government in this case relies on the district court's alternative holding that the prohibition of 18 U.S.C. § 922(g)(8) is a narrowly tailored and reasonable restriction on an individual right to bear arms. (Brief of Appellee at 20-21).

The court rejects Lippman's constitutional claim on the ground that under circuit precedent, the Second Amendment protects the bearing of arms only when it is "reasonably related to the maintenance of a well regulated militia." By this phrase, the court appears to mean that the Constitution protects the right to possess and bear arms only for a member of an organized state militia or for one who is engaged in active military service or training. *See United States v. Hale*, 978 F.2d 1016, 1020

9

(8th Cir. 1992); *United States v. Nelson*, 859 F.2d 1318, 1320 (8th Cir. 1988). Consistent with the current position of the United States, the United States Attorney has declined to rely on these precedents, heeding direction from the Attorney General that "[j]ustice is best achieved, not by making any available argument that might win a case, but by vigorously enforcing federal law in a manner that heeds the commands of the Constitution." (App. 339, Memorandum from Attorney General Ashcroft to All United States Attorneys, Nov. 9, 2001) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

It is an interesting question whether a prior panel decision binds a subsequent panel if both parties believe that the precedent is incorrect and decline to invoke it. *Cf. United States v. Woods*, 364 F.3d 1000, 1001 (8th Cir. 2004) (per curiam). I need not dwell on that conundrum here, because Lippman's constitutional claim also fails under the more expansive interpretation of the Second Amendment advanced by the parties. I would resolve Lippman's claim by assuming that the Second Amendment protects an individual's right to possess a firearm, and then examining whether the restriction imposed by § 922(g)(8) is a permissible regulation of that right. For the reasons stated by the court in its alternative holding, *ante* at 7-8, and by the Fifth Circuit in *United States v. Emerson*, 270 F.3d 203, 260-64 (5th Cir. 2001), *cert. denied*, 536 U.S. 907 (2002), I conclude that the prohibition on possession of a firearm by a person subject to a domestic violence restraining order is constitutional.

_____